**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| ROSEMANN, et al., <br><br>　　　　Plaintiffs, <br><br> vs. <br><br> MARTIN SIGILLITO, et al., <br><br>　　　　Defendants. | No. 10-CV-1165-LRR <br><br> **ORDER** |

_____

*I.     INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.    PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*III.   FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
　　　*A. Players* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
　　　*B. Alleged "Ponzi Scheme"* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*IV.   ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
　　　*A.   Applicable Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
　　　*B.   Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
　　　　　*1.   Choice of law and forum provisions* . . . . . . . . . . . . . . . . . . *6*
　　　　　*2.   Sigillito's other reasons for dismissal* . . . . . . . . . . . . . . . . . *9*
　　　*C.   Alternative Request to Make More Definite and Certain* . . . . . . . . *9*

*V.    CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*

## I. INTRODUCTION

The matter before the court is Defendant Martin Sigillito's "Motion to Dismiss Plaintiffs' Complaint or in the Alternative, Motion to Make More Definite and Certain" ("Motion") (docket no. 14).

## II. PROCEDURAL HISTORY

On June 30, 2010, Phil Rosemann and twenty-three other named Plaintiffs filed a Complaint (docket no. 1). The Complaint alleges that Defendants Sigillito and Does 1 through 50 violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") and

seeks civil remedies under 18 U.S.C. § 1964(c).  On August 10, 2010, Defendant filed the Motion.  On August 12, 2010, Plaintiff filed a Resistance (docket no. 16).  On August 25, 2010, the court held a hearing ("Hearing") on the Motion and reserved ruling on the Motion.  The Motion is fully submitted and ready for decision.

### III.  FACTUAL BACKGROUND

Accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party, the facts are as follows:

#### A.  Players

The Defendants are Sigillito, an individual and citizen of Missouri, and fifty unknown defendants referred to in the Complaint as Does 1 through 50.  The twenty-four Plaintiffs named in the Complaint are: (1) Phil Rosemann, an individual and citizen of Nevada; (2) Hal and Jan Millsap, individuals and citizens of Arkansas; (3) David and Diane Caldwell, individuals and citizens of Arkansas; (4) William and Carol Phillips, individuals and citizens of Arkansas; (5) Edward Chunglo, an individual and citizen of Arizona; (6) Calvin Wright, an individual and citizen of Arizona; (7) Stan Kuhlo, an individual and citizen of Missouri; (8) Paul and Margaret Fancher, individuals and citizens of Arkansas; (9) Wanda and Carl Lavender, individuals and citizens of Arizona; (10) William Gaylor, an individual and citizen of Ohio; (11) Leonard Roman, an individual and citizen of Ohio; (12) Frank and Helga Costello, individuals and citizens of Michigan; (13) Kenneth and Shirley Potgeter;[1] (14) Ronald Pastor, an individual and citizen of Michigan; (15) David Schultz, an individual and citizen of Michigan; (16) Brian Waffle, an individual and citizen of Michigan; and (17) Nina Blaylock, an individual and citizen of Arizona.  Distinctive Properties (UK) Limited ("Distinctive Properties"), a non-party, is an England-based company owned by Derek Smith, who is also a non-party in this

---

[1]The Complaint provides a Michigan address for Kenneth and Shirley Potgeter, but does not allege that they are individuals and citizens of Michigan.

action.

### B. Alleged "Ponzi Scheme"

Sigillito, an attorney and American Anglican Bishop, organized and operated a fraudulent loan program that induced individuals to loan money to Distinctive Properties for purported land purchases in England. Sigillito and the co-defendants (collectively, "Defendants") falsely represented to Plaintiffs that Smith had an excellent record of making money by optioning land and reselling the land for substantial profits. Defendants also falsely represented to Plaintiffs that Smith's net-worth was $53,637,500, that "Distinctive Properties had an impeccable track record in England" and that Distinctive Properties had previously repaid many loans on time and as promised. Complaint at ¶ 31.

Defendants promised Plaintiffs that they would receive a 16% to 23% annual return for making a one-year "asset line"-based loan to Distinctive Properties, personally guaranteed by Smith. Complaint at ¶ 8. However, many of the loan documents were not actually signed by Smith; instead, Sigillito assembled the loan documents in the United States by copying Smith's signature from a loan document Smith signed several years earlier.

Plaintiffs allege that Defendants used funds contributed by new investors to pay purported returns to earlier investors, defrauding over one-hundred individuals of more than $45 million. Of that $45 million, only $910,773.60 was sent to Distinctive Properties for the purchase of real estate. The remainder of the funds were either disguised as interest and paid to private lenders or diverted to Defendants' bank accounts. Defendants told investors that the loans were used to acquire land and options and that the investments were performing as planned; however, Defendants knew these statements to be false.

### IV. ANALYSIS

In the Motion, Sigillito asks the court to dismiss the Complaint for the following reasons: (1) Plaintiffs did not attach their loan agreements to the Complaint; (2) the

Complaint fails to allege specific dates when some of the loan agreements were made; (3) Plaintiffs wrongly allege that Brian Waffle signed a loan agreement with Sigillito, when decedent Larry Waffle was the actual lender and Brian[2] Waffle is the representative of Larry's estate; and (4) "many" of the loan agreements giving rise to the claims in the Complaint contained choice of law and forum provisions making England the proper forum for this suit, and divesting this court of jurisdiction over the action. Motion at ¶ 15.

Sigillito does not specify what Federal Rule of Civil Procedure he is invoking to seek dismissal of the claims in the Complaint. Sigillito relies in large part upon the alleged "choice of forum" provisions in the loan agreements for the proposition that "the entire Complaint be dismissed for lack of jurisdiction." Motion at ¶ 17. There is presently disagreement in the Circuit Courts of Appeal as to whether Rule 12(b)(1), 12(b)(3) or 12(b)(6) should be applied in motions to dismiss based upon forum selection clauses, *see Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 547-48 (4th Cir. 2006) (listing cases), and the Eight Circuit Court of Appeals has not yet decided the issue, *see Rainforest Café, Inc. v. EklecCo, L.L.C.*, 340 F.3d 544, 546 n.5 (8th Cir. 2003). Because the result in this case is the same regardless of which Federal Rule of Civil Procedure properly governs a motion to dismiss based upon a forum selection clause, the court need not decide the issue. *See Rainforest Café*, 340 F.3d at 546 n.5 (declining to decide the issue because moving party raised both Rule 12(b)(3) and 12(b)(6) as bases for dismissal); *see also Haynsworth v. The Corporation*, 121 F.3d 956, 961 (5th Cir. 1997) ("As the parties do not raise it, we . . . need not reach the . . . enigmatic question of whether motions to dismiss on the basis of forum selection clauses are properly brought as motions under Fed. R. Civ. P. 2(b)(1), 12(b)(3), or 12(b)(6)[.]"). However, because Sigillito raises other grounds for dismissal which appear to frame arguments that Plaintiffs failed

---

[2]Sigillito also appears to assert Brian is actually spelled "Bryan," however, the court will refer to the individual as Brian for purposes of this Order.

to state a claim or sufficiently plead claims in the Complaint, the court will discuss those standards below.

### A. *Applicable Standards*

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a claim when it fails "to state a claim upon which relief can be granted." When ruling on a Rule 12(b)(6) motion, the court must accept as true all of the factual allegations in the complaint, "no matter how skeptical the court may be." *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1959 (2009). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at ___, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord B&B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009). Stated differently, "a complaint must contain factual allegations sufficient 'to raise a right to relief above the speculative level[.]'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Bell Atl.*, 550 U.S. at 555); *see also Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (examining federal pleading standards).

Where, as here, Plaintiffs' claims under RICO are based entirely upon the predicate acts of mail and wire fraud, Plaintiffs' "substantive RICO allegations must comply not only with the plausibility criteria articulated in [*Bell Atl.*] and *Iqbal* but also with Fed. R. Civ. P. 9(b)'s heightened pleading standard[.]" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010); *see also Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 919 (8th Cir. 2001) (noting a heightened pleading standard applies to allegations of mail fraud and wire fraud when used as predicate acts for a RICO claim). Pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

### B. *Motion*

*1.    Choice of law and forum provisions*

The court has before it only two of the many loan agreements at issue in this case. One of the loan agreements contains the following provision:

**16    Governing law and jurisdiction**

16.1   This agreement shall be governed by and construed in accordance with the Laws of England applicable to contracts wholly to be performed therein.

16.2   It is irrevocably agreed for the exclusive benefit of the lender that the courts of England are to have jurisdiction to settle any disputes which October arise out of or in conjunction with this agreement and that accordingly any suit, action or proceedings arising out of or in connection with the agreement October be brought in such courts.[3]

16.3   Nothing in this clause shall limit the Lender's right to take proceedings against the Borrower in any other court of competent jurisdiction, nor shall the taking of proceedings in one or more jurisdictions preclude the taking of proceedings in any other jurisdiction, where concurrently or not.

Defendant's Exhibit 1 ("Exhibit 1") (docket no. 14-1) at ¶ 16. Sigillito contends this provision is an enforceable choice of law and forum provision, and as a result, Plaintiffs' claims in this case may only be brought in England.

In the Resistance, Plaintiffs claim the choice of law and choice of forum provision in the loan agreement need not be considered because Plaintiffs' claims arise out of RICO and not out of breach of contract claims. However, several United States Courts of Appeals have held that choice of law and choice of forum provisions remain applicable in claims under RICO. *See, e.g., Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417, 421-26 (7th Cir. 2009); *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1172-83 (10th Cir.

---

[3] It is unclear why the word "October" is used twice in section 16.2. The parties have not explained the relevance of the word, and for purposes of this Order, the court ignores its presence.

2009); *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998); *Bonny v. Soc. of Lloyd's*, 3 F.3d 156, 159-62 (7th Cir. 1993); *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360-66 (2d Cir. 1993) (holding American Plaintiffs who brought suit for violations of RICO and federal securities statutes were bound by the forum selection and choice of law provisions in their underlying contracts).

For purposes of the court's choice of law and choice of forum analysis only, the court will assume, without deciding, that this particular loan agreement is binding. In the United States, "[a] general maxim in interpreting forum-selection clauses is that 'an agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion.'" *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 290 (4th Cir. 2007) (quoting *John Bourari & Son, Wines & Spirits, S.A. v. Attiki Imp. & Distrib., Inc.*, 22 F.3d 51, 53 (2d Cir. 1994)); *See Dunne v. Libbra*, 330 F.3d 1062, 1064 (8th Cir. 2003); *Cent. National-Gottesman, Inc. v. M.V. "Gertrude Oldendorff"*, 204 F. Supp. 2d 675, 678 (S.D.N.Y. 2002) ("For a forum selection clause to be deemed mandatory, jurisdiction and venue must be specified with mandatory or exclusive language."). Applying this general maxim to the loan agreement, the required language demonstrating the intent of the parties to make England the exclusive forum for suit on any claim "arising out of or in connection with the agreement" is notably absent. Exhibit 1 at ¶ 16.2. Thus, were this court to apply United States federal law to interpret the loan agreement, this particular provision would be deemed a mere "permissive forum selection clause," which does not prohibit suit in other courts. *Dunne*, 330 F.3d at 1064.

However, the loan agreement contains a choice of law provision which states that the "agreement shall be governed by and construed in accordance with the Laws of England[.]" Exhibit 1 at ¶ 16.1. Once again, assuming, without deciding, that the choice of law provision is enforceable, the court will consider the choice of forum provision in light of English law. English law is apparently contrary to U.S. federal law on the issue of how

7

to interpret forum selection clauses.  An oft cited principle in English law is:

> If the parties [to a contract], one or more of whom is domiciled in a Member State, have agreed that a court or the courts of a Member State are to have jurisdiction to settle any disputes which have arisen or which may arise in connection with a particular legal relationship, that court or those courts shall have jurisdiction.  Such jurisdiction shall be exclusive unless the parties have agreed otherwise.

Council Regulation (EC) No 44/2001 of December 2000 on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters, Article 23, *cited in Astrazeneca UK Ltd. v. Albermarle Int'l Corp*, [2010] EWCH (Comm) 1028, [43], 2010 WL 1649015 (Eng. Dec. 5, 2010).  Thus, a contract provision granting jurisdiction in a particular forum is deemed to be a grant of exclusive jurisdiction absent an agreement to the contrary.

Despite this general principle, however, the court cannot find the forum selection clause in section 16.2 of the loan agreement to be a mandatory forum selection clause when read in light of the other applicable language in the loan agreement.  Under English law, a "contract must be read as a whole and every effort should be made to give effect to all of its clauses." *Ace Capital Ltd. v. CMS Energy Corp.*, [2008] EWCH (Comm) 1843, [70], 2008 WL 2976535 (Eng. July 30, 2008).  Section 16.2 of the loan agreement cannot be construed to confer exclusive jurisdiction to the courts of England because section 16.3 of the loan agreement provides, "Nothing in this clause shall limit the Lender's right to take proceedings against the Borrower in any other court of competent jurisdiction, nor shall the taking of proceedings in one or more jurisdictions preclude the taking of proceedings in any other jurisdiction, where concurrently or not."  Exhibit 1 at ¶ 16.3.  Reading the loan agreement as a whole, and giving effect to all clauses therein, the court finds section 16.2 of the loan agreement is a permissive choice of forum provision under both federal law and English law.  Such a provision is "an affirmative conferral of personal jurisdiction by

consent, and not a negative exclusion of jurisdiction in other courts." *Autoridad de Energia de Puerto Rico v. Ericsson Inc.*, 201 F.3d 15, 19-20 (1st Cir. 2000).[4]

### 2. *Sigillito's other reasons for dismissal*

Sigillito also asks the court to dismiss the Complaint because Plaintiffs did not attach their loan agreements to the Complaint; the Complaint fails to allege specific dates when some of the loan agreements were made; Plaintiffs wrongly allege that Brian Waffle signed a loan agreement with Sigillito when the loan agreement was actually signed by Larry Waffle, who is deceased, and Brian Waffle is the representative of Larry's estate; and "misstatements similar to the Waffle loan" are made in the Complaint regarding many of the other loan agreements. Motion at ¶ 10.

The court finds that the Complaint is not subject to dismissal for any of the above stated reasons under either Federal Rule of Civil Procedure 12(b)(6) or Rule 9(b). The Complaint sets forth the names and addresses of each of the twenty-four Plaintiffs, summarizes the number of loans each Plaintiff made and provides a dollar amount that indicates the total each Plaintiff loaned Defendants. The Complaint also provides a detailed description of the alleged "ponzi scheme." The Complaint sets forth each element of the RICO statutes Defendants allegedly violated and provides a description of specific activity Defendants engaged in to violate those elements. Thus, the Complaint is plead with particularity under Rule 9(b) and does not fail to state a claim under Rule 12(b)(6).

### C. *Alternative Request to Make More Definite and Certain*

Alternatively, Sigillito seeks a more definite statement regarding several of the allegations in the Complaint. Specifically, Sigillito seeks (1) "the specific language in each of the fifty-eight loan agreements that allow suit to be brought in this Court," Motion at

---

[4] Because the court concludes the choice of forum provision is permissive, the court need not consider Plaintiffs alternative arguments that the choice of law provision was induced by fraud, or that suits against Sigillito, a non-party, are not covered by the underlying contract.

¶ 18; (2) the identity of Sigillito's alleged co-conspirators; (3) the specific misrepresentations "made to each Plaintiff as to each loan, and by whom," Motion at ¶ 20; and (4) specific dates of each of the interstate telephone calls Sigillito allegedly made and the specific representations made therein.  Much of the information Sigillito seeks in the Motion can be obtained through discovery.  A Federal Rule of Civil Procedure 12(e) motion for a more definite statement is not to be used as a general discovery device.  *See, e.g., Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959); *see also Zamora v. Massey-Ferguson, Inc.*, 336 F. Supp. 588, 592 (S.D. Iowa 1972) (finding the matters sought were subject to the broad rules of discovery, and "[w]hen this is true, motions for more definite statement are not favored").  Further, Sigillito admits in the Motion that he "contemplates additional motions to dismiss based on failure to state a claim, but until the Complaint is made more definite and certain . . . , he cannot file his motions." Motion ¶ 22.  A Rule 12(e) motion for a more definite statement should be used to assist a litigant in preparing a responsive pleading, and it is improper to use a Rule 12(e) motion to prepare for a motion to dismiss.  61A Am. Jur. 2d Pleading § 424 (2010).

The language of Rule 12(e) makes clear that a motion for a more definite statement is to be used when a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).  The court has already concluded that the Complaint satisfies the heightened pleading standard in Rule 9(b), and it is axiomatic that the Complaint is sufficiently definite and certain to allow Sigillito to draft a responsive pleading.  Therefore, the court shall deny Sigillito's request for a more definite statement.

### V.  CONCLUSION

In light of the foregoing, the Motion (docket no. 14) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 16th day of September, 2010.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA