**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PHIL ROSEMANN et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 4:10-cv-1165-LRR** |
| **v.** | ) | |
| | ) | |
| **MARTIN SIGILLITO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS PAUL VOGEL AND**
**LYNN VOGEL'S JOINT MOTION TO DISMISS PLAINTIFFS'**
**AMENDED COMPLAINT FOR FAILURE TO STATE A CAUSE OF ACTION**

COME NOW, Defendants **Paul Vogel** and **Lynn Vogel**, by and through their undersigned

counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, move this Court to

dismiss Plaintiffs' Amended Complaint.  In support, Defendants state as follows:

## I.  FACTS IN AMENDED COMPLAINT

Plaintiffs are 76 individuals from several states who have brought this Amended

Complaint against various Defendants, including Paul Vogel and Lynn Vogel, alleging they were

defrauded of millions of dollars in a Ponzi scheme.[1]  (See, Doc. 40)  The alleged scheme was

apparently masterminded by Defendant Martin Sigillito, who purported to arrange one year loans

to Distinctive Properties and Derek Smith, a real estate developer in England. (See, Doc. 40)

Defendants are referred to collectively as having a procedure whereby Plaintiffs loaned

money to Distinctive Properties, with Derek Smith as the personal guaranty or surety.  In this

procedure, the loan agreement was between each Plaintiff as a "lender" and Distinctive Properties

---

[1] All facts are from the allegations contained in the Amended Complaint.  Defendants Paul and
Lynn Vogel view these facts as true for purposes of this motion only as required by the applicable
standard of review.  The use of these facts is not to be taken as an admission of their truth for
purposes other than the instant motion to dismiss.

as the "borrower," and Derek Smith as the "surety".  (Doc. 40, ¶ 25)  The loan agreement provided that the money was being borrowed by Derek Smith for "business purposes."  (Doc. 40, ¶ 25 and Exhibit 5, p. 2)  The Amended Complaint further alleges that, although the Defendants informed the Plaintiffs that Derek Smith had been successful and that he was making the loan payments, none of the payments made to the Plaintiffs during the 10 years of the scheme came from funds provided by Derek Smith.  (Doc. 40, ¶ 34)

The Plaintiffs make various claims against the Vogels, namely that Paul Vogel is liable for professional negligence in his role as both an attorney and as an accountant, that he breached his fiduciary duty as a result of his association with Enterprise Trust, and that he, along with five named Defendants and ten unnamed "does," participated in the affairs of Martin Sigillito & Associates through a pattern of racketeering activity over a period of four years in violation of the RICO statute, and that these members also conspired to violate RICO.  (See, Doc. 40, Counts 1, 2, 6, and 7).  The only claim against Lynn Vogel is a professional negligence claim as a result of her position as an attorney.  (See, Doc. 40, Count 8)

Claims are being asserted against the Vogels, based in large part upon Paul Vogel's "due diligence report" (marked Exhibit 3 to Doc. 40), and claims that Paul Vogel was given a finder's fee for securing these loans and obtaining an association with Enterprise Trust, where Paul Vogel was a former president.  According to the Amended Complaint, in late 2008, when many Plaintiffs sought to withdraw their money and not renew the investment, Defendants Martin Sigillito and Paul Vogel provided Plaintiffs a report about a "due diligence visit for Distinctive Properties and Derek Smith."  (Doc. 40, ¶ 52-53).  It was mailed on February 10, 2009.  (See, Doc. 40, ¶¶ 52-53) The report confirmed that "Derek Smith's three major assets (Hinton Grange Hotel, Little Farm Nursery and Backnell) listed as having a value of $32.7 million are conservatively valued".  (See

2

Doc. 40, ¶ 54)  According to the Plaintiffs, this report overvalued the properties at issue.  (Doc. 40, ¶¶ 54-55)

The Amended Complaint further alleges that Martin Sigillito recruited Paul Vogel, the President and CEO of the Trust Department for Enterprise Trust, to "secure private lenders for a fee and to intercept client's complaints with Enterprise Trust."  (Doc. 40, ¶ 66)  Also, "as a lawyer, certified public accountant, banker and developer, he [Vogel] lent his credentials and credibility with full force to investments with Derek Smith, including authoring the due diligence report (Exhibit 3) to ease lenders' concerns over missed payments."  (Doc. 40, ¶ 66.)

On November 8, 2007, Paul Vogel allegedly resigned as President of Enterprise Trust, but entered into an agreement with Enterprise Trust to secure new clients.  (Doc. 40, ¶ 67)  The subsequent press release is alleged to have stated that he was "entering into an agreement with a new private multi-family wealth management office for ultra-high net worth individuals and families."  (Doc. 40, ¶ 67.)

The Plaintiffs further allege in their Amended Complaint that Defendants Lynn Vogel and Paul Vogel prepared the loan agreements from 2008 to 2010.  (Doc. 40, ¶ 82)  "Phil Rosemann's loan identifies Lynn Vogel as the attorney (Exhibit 5).  Leonard Roman's loan identifies Paul Vogel as the attorney (Exhibit 13)."  (Doc. 40, ¶ 82)  These allegations do not contend that Defendants Lynn Vogel and/or Paul Vogel were the attorneys for any Plaintiff, but only allege that they were attorneys who had prepared these loan documents.  The other averments of the Amended Complaint are silent as to Lynn Vogel in all other regards.

Finally, the Amended Complaint alleges that Defendant Paul Vogel and others received "substantial undisclosed fees from Plaintiffs' investments during the past four years for brokering loans for Derek Smith".  (Doc. 40, ¶ 98)

As a result of these alleged actions, Plaintiffs claim that Defendant Paul Vogel, along with other named and unnamed individuals,[2] participated in the affairs of Martin Sigillito & Associates through a pattern of racketeering activity in violation of the RICO statute, 18 U.S.C. § 1962(c). Martin Sigillito & Associates, without further description or identification, is named as the RICO enterprise utilized to conduct the pattern of racketeering.  (Doc. 40, ¶ 109).

In paragraphs 111-117, the Amended Complaint alleges that the Defendants, over a four year period of time used the mail hundreds of times in furtherance of a mail fraud scheme in violation of 18 U.S.C. § 1341.  Paragraphs 118-127 of the Amended Complaint allege that Martin Sigillito & Associates and the unspecified co-defendants over a four year period of time, sent through interstate electronic communication various forms of messages in furtherance of the wire fraud statute in violation of 18 U.S.C. § 1344.  However, the Amended Complaint fails to alleged specifically when, where, how or why any particular Defendant made or caused to be made any individual mailings or electronic communications.  The Plaintiffs have also failed to allege the contents of these communications.

Paragraph 130 of the Amended Complaint also alleges that in violation of the money laundering statute, 18 U.S.C. § 1956, the Defendants made over one hundred interest and principal payments to the plaintiffs, making it appear that the payments were from Derek Smith.  As with the alleged violations of RICO and the wire fraud statute, Plaintiffs provide no factual context to support their bare- allegations.

All of these alleged actions are then utilized to form the basis of a RICO conspiracy claim in violation of 18 U.S.C. § 1962(d).  (Doc. 40, Count 2).  However, only bare assertions of conspiracy are ever alleged, and these boil down to allegations that because these defendants

---

[2] The other named defendants to the RICO Count are Martin Sigillito, Scott Brown, Enterprise Trust, Roland Baer and M & M Financial. (See, Doc. 40, page 30).

4

allegedly participated in a substantive RICO violation that they must have also conspired together to violate RICO.

This Motion to Dismiss will address Counts 1 and 2, the substantive RICO count and the RICO conspiracy count, along with Counts 6 through 8, which allege professional negligence and breach of fiduciary duty against Paul Vogel and professional negligence on the part of Lynn Vogel. It is important to note that Lynn Vogel is not named as a defendant in the RICO claims.

## II.  ARGUMENT

**A.    STANDARD OF REVIEW**

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint in order to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (*quoting*, *Neitzke v. Williams*, 490 U.S. 318, 326-327 (1989)).  A complaint must be dismissed for failure to state claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 (2007).

In ruling on a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232 (1974).  "The motion will succeed or fail based upon the allegations contained in the face of the complaint." *McAuley v. Fed. Ins. Co.*, 500 F.3d 784, 787 (8th Cir. 2007).  However, the factual allegations in the complaint must be more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Upon careful examination of the Amended Complaint as to the Vogels, it becomes apparent that the allegations, even if deemed to be true, are threads of pleadings held together by

"legal superglue," so as to make many things appear to be related and interconnected, but without the pleading of facts necessary to support the assumptions and speculative conclusions that are reached in the First Amended Complaint.  Since an understanding of the non-RICO counts against Paul and Lynn Vogel facilitate an understanding of the Plaintiffs' failure to state a cause of action, the allegations of Counts 6, 7 and 8 will be addressed prior to the argument confirming why the RICO related counts, 1 and 2, must be dismissed as to Defendant Paul Vogel.

**B.   PROFESSIONAL NEGLIGENCE - PAUL VOGEL (COUNT 6) AND LYNN VOGEL (COUNT 8): Plaintiffs' claims in Counts 6 and 8 for professional negligence against the Vogels fail to state a claim on their face and must be dismissed pursuant to Rule 12(b)(6).**

Paul and Lynn Vogel are attorneys licensed and practicing in Missouri.  Although this lawsuit is filed in the Eastern District of Missouri, Counts 6, 7 and 8 of this lawsuit are governed by Missouri law.  *See, Leonard v. Dorsey & Whitney, LLP,* 553 F.3d 609 (8th Cir. 2009); *Washburn v. Soper,* 319 .3d 338 (8th Cir. 2003); *First Union Nat. Bank v. Benham,* 423 F.3d 855 (8th Cir. 2005); *Eichenwald v. Small,* 321 F.3d 733 (8th Cir. 2003) (holding that legal malpractice claim accrued in Missouri and therefore was governed by Missouri state law).

**1.   Legal Malpractice**

The well-established elements necessary for a plaintiff to prove a legal malpractice action in Missouri are:

> (1) that *an attorney-client relationship existed*; (2) that defendant acted negligently or in breach of contract; (3) that such acts <u>were the proximate cause of the plaintiffs' damages</u>; and (4) that <u>but for</u> defendant's conduct the plaintiffs would have been successful in the prosecution of their [underlying] claim.

*Boatright v. Shaw, et al.*, 804 S.W.2d 795, 796 (Mo. App. E.D. 1991) (emphasis added).  *See also, Scher v. Sindel, et al.*, 837 S.W.2d 350, 353 (Mo. App. E.D. 1992); and *Novich v. Husch & Eppenberger, et al.*, 24 S.W. 3d 734, 736 (Mo. App. E.D. 2000).

**a. Plaintiffs fail to state a claim as they do not allege an attorney-client relationship.**

As the foregoing demonstrates, in a legal malpractice case, it is essential, first and foremost, that there has been an attorney-client relationship between the Plaintiffs and these Defendants. Where, based upon the face of the Complaint, neither Paul Vogel nor Lynn Vogel had an attorney-client relationship with any of the Plaintiffs, the first essential element fails. None of the Plaintiffs were clients of the Vogels in any of the transactions which are pled. Plaintiffs do not even attempt to plead that either of the Vogels were their attorneys. Without the presence of the first essential element, the attorney-client relationship, Plaintiffs' claims for professional/legal malpractice in Counts 6 and 8 against Paul Vogel and Lynn Vogel fail.

In *Twombly*, the United States Supreme Court warned that the factual allegations in the complaint must be more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." 550 U.S. at 555. Simply labeling Defendants Paul Vogel and Lynn Vogel as being "listed as the attorney in (numerous) / (more than one hundred) Loan Agreements" does not meet the test for the establishment of an attorney-client relationship between these Defendants and the particular Plaintiff involved in each loan agreement. (Doc. 40, ¶170 and  ¶182, respectively). Indeed, the Amended Complaint is devoid of any allegation that Defendants Paul Vogel or Lynn Vogel were actually the attorneys for any of the Plaintiffs in this case.

**b. Plaintiffs fail to state a claim as they do not allege "but for" causation between the alleged professional negligence and their damages.**

Although the absence of an attorney client relationship, a critical element for the establishment of this cause of action, requires that these Counts be dismissed, Plaintiffs also fail to plead the integral element of "but for" causation.   Failure to plead this element also requires that the Court dismiss the cause of action.  *See*, ***Boatright v. Shaw, et al.***, *supra*.

This is not only a technical pleading failure, but reflects a fundamental misconception on the part of Plaintiffs regarding what they must plead and eventually prove in this case. This is often considered in the context of litigation matters, but the doctrine also applies to transactional matters.

> The basis of the motion was that under Missouri law plaintiff is required to establish that his original action was meritorious and would have been successful if it had gone to trial. *Roehl v. Ralph*, 84 S.W.2d 405 (Mo.App. 1935); *Lange v. Marshall*, 622 S.W.2d 237 (Mo.App. 1981). He, therefore, must "recreate" or "relitigate" the underlying lawsuit.

*Calhoun v. Lang*, 694 S.W.2d 740, 742 (Mo.App. E.D. 1985). In other words, under the facts of the instant case, Plaintiffs must successfully prove that there exists a causal connection between these attorneys' breach of the standard of care and the Plaintiffs' damages. *Tompkins v. Cervantes*, 917 S.W.2d 186, 189 (Mo.App. E.D. 1996). This, Plaintiffs have failed to plead. Plaintiffs cannot establish an attorney-client relationship or "but for" causation. Since these elements are not pled, the claims must be dismissed as a matter of law.

Not only is there a failure to plead that the Vogels' actions caused Plaintiffs' damage and that "but for" their negligence there would have been no damage, the pleadings are very detailed about the alleged cause of Plaintiffs' damages. That cause was a Ponzi scheme masterminded by Defendants Sigillito, Brown, and Smith. Thus, the Plaintiffs specifically plead other matters and other Defendants were the cause of their damages, and do not plead that but for the Vogels' alleged negligence, the Plaintiffs would not have been damaged. Therefore, the Plaintiffs' claim for professional negligence against both Paul and Lynn Vogel must fail.

### 2. Accounting Malpractice

Count 6 against Paul Vogel also alleges that Mr. Vogel is a certified public accountant and was negligent in the performance of his duties as an accountant. There is no clear allegation

regarding what Paul Vogel allegedly did in his capacity as an accountant, only a conclusory pleading of alleged negligence.

There is no allegation that Paul Vogel was the CPA for any of the Plaintiffs, just as there was no allegation of an attorney-client relationship.  Likewise, there is no allegation that Paul Vogel engaged in accounting work for the Plaintiffs by preparing any reports, or that anything about that non-existent accounting work caused Plaintiffs' damage.  There is no allegation that Paul Vogel was retained by any Plaintiff in this case in any regard, or paid a fee from any Plaintiff in this lawsuit.

More important, however, is the fact that the Plaintiffs have merely lumped an extremely vague allegation of accounting malpractice in with a legal malpractice claim and allegations.  This comingling of claims makes it difficult, if not impossible, for Paul Vogel to adequately defend himself as it is not clear from the Amended Complaint what actions Plaintiffs are alleging he took in his capacity as an accountant versus his capacity as an attorney.  Therefore, Plaintiffs fail to state a claim and their accounting and legal malpractice count should be dismissed.

**C.    BREACH OF FIDUCIARY DUTY – COUNT 7: Plaintiff's claim against Paul Vogel in Count 7 fails to state a claim for breach of fiduciary duty and must be dismissed.**

A claim of a breach of fiduciary duty by an attorney may under the facts of a specific case actually be an action for professional negligence and should be treated under the law as a legal malpractice claim. Nevertheless, the elements of this action are: (1) an attorney-client relationship; (2) breach of fiduciary obligation by the attorney; (3) proximate causation; (4) damages to the client; and (5) no other recognized tort encompasses the facts alleged.  *Klemme v. Best*, 941 S.W.2d 493 (Mo. 1997); 34 *MOPRAC* § 12:2.

Indeed, in this Count 7, as in Counts 6 and 8, again Plaintiffs fail to plead or claim that an attorney-client relationship existed between Plaintiffs and Defendant Paul Vogel (See Doc. 40, ¶¶

176-180) Plaintiffs further allege only that Plaintiffs were customers of Enterprise Trust and not clients of Paul Vogel, in either his capacity as their attorney or their accountant. For all the reasons set forth in the prior section of this Memorandum, this omission is fatal to Plaintiffs' claims.

A "breach of fiduciary obligations," the second element of a breach of fiduciary duty claim, is constructive fraud. ***Klemme***, 941 S.W.2d at 496. The rationale for this element is that "a breach of the standard of care is negligence and a breach of a fiduciary obligation is constructive fraud". ***Id.*** The fifth element, that no other tort encompasses the facts alleged, flows from ***Donahue v. Shughart, Thomson & Kilroy, P.C.***, 900 S.W.2d 624 (Mo. banc 1995). In that case, because the alleged breach of fiduciary duty was "dependent on" the existence of attorney negligence, the Court held that the alleged breach was "no more than an action for attorney malpractice." ***Donahue*** at 629-30. "If the alleged breach can be characterized as both a breach of the standard of care (legal malpractice based on negligence) and a breach of a fiduciary obligation (constructive fraud), then the sole claim is legal malpractice." ***Klemme***, 941 S.W.2d at 496, *citing **Donahue.***

The alleged breaches of fiduciary duty present in Count 7 in brokering the loans, conducting the due diligence investigations, and drafting the Loan Agreements are essentially the same duties as are being alleged in Count 6 for professional negligence. These alleged breaches of fiduciary duties can also be characterized as the breach of the standard of care for legal malpractice. As such this Count further fails as it is subsumed by Count 6 for professional negligence.

Accordingly, Count 8 fails to state a cause of action for breach of fiduciary duty in that Plaintiff fails to allege each of the necessary elements for such a cause of action, and Count 8 must be dismissed under Rule 12(b)(6).

**D.      RICO VIOLATION OF 18 U.S.C. § 1962(C) – COUNT 1**

In this case, the Plaintiffs' claim for a substantive RICO violation must be dismissed.  The Plaintiffs have failed to allege basic facts regarding the RICO enterprise, Martin Sigillito & Associates.  They have also failed to allege that Paul Vogel conducted or directed the affairs of Martin Sigillito & Associates, and in fact, have no allegations of any involvement of Paul Vogel with Martin Sigillito & Associates.  Moreover, the pleadings requirements of Rule 9(b), which apply to allegations of predicate acts of mail and wire fraud, have also not been met as basic facts with regards to these acts have not been alleged.  As such, Count 1 of the Plaintiff's Amended Complaint must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**1.  Pleading Requirements**

**a.  Rule 8 – Requirements for General Allegations**

In ***Bell Atlantic Corp. v. Twombly***, the Supreme Court rewrote the standard for determining whether factual allegations in a Complaint are sufficient to survive a Rule (12)(b)(6) Motion to Dismiss, holding that Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the Defendant notice of what the … claim is and the ground upon which it rests**."** 550 U.S. 544 (2007).  While a complaint need not plead detailed factual allegations, a plaintiff is obligated to provide the "grounds" of his "entitlement to relief" beyond simple labels and conclusions, and – a formulaic recitation of the elements of the cause of action will not suffice.  ***Id.***  "Factual allegations must be enough to raise a right to relief above the speculative level." ***Id.***

Expanding upon ***Twombley*** in ***Ashcroft v. Iqbal***, the Supreme Court stated that the "short and plain statement" requirement "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  129 S.Ct. 1937, 1949 (2009).   "Nor does a

complaint suffice if it tenders 'naked assertions[s]' devoid of 'further factual enhancement.'" ***Id.*** (citing *Twombly*, 550 U.S. at 557).

In the wake of ***Twombley***, the Eighth Circuit has recognized that "to survive a Motion to Dismiss, a complaint must contain factual allegations sufficient to raise a right to relief above the speculative level …" ***Parkhurst v. Tabor***, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Twombley*, 550 U.S. at 555). Stated differently, the complaint must allege "enough facts to state the claim to relief that is plausible on its face." ***B&B Hardware, Inc. v. Hargis Industries, Inc.***, 569 F.3d 383, 387 (8th Cir. 2009). Plaintiffs have failed to meet this standard with regard to their allegation that Martin Sigillito & Associates is a RICO enterprise, and how Paul Vogel is allegedly involved in this enterprise. Without meeting this fundamental standard, Plaintiffs' claim fails on its face and should be dismissed.

### b. Pleading Fraud Under Rule 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure "requires a plaintiff to allege with particularity the facts constituting fraud." ***Independent Business Forms v. A-M Graphics***, 127 F.3d 698, 703 (8th Cir. 1997). "When pleading fraud a plaintiff cannot simply make allegations." ***Roberts v. Francis***, 128 F.3d 647, 651(8th Cir. 1997). Rather, Rule 9(b) requires "the who, what, when, where, and how: the first paragraph of any newspaper story." ***Great Plains Trust v. Union Pacific Railroad Company***, 492 F.3d 986 (8th Cir. 2007).

Importantly, courts have held that where, as here, a case involves multiple defendants, Rule 9(b) does not allow a complaint to merely lump multiple defendants together. ***Swartz v. KPMG, LLP***, 476 F.3d 756, 764-65 (9th Cir. 2007). Rather, Rule 9(b) requires plaintiffs to differentiate their allegations and inform each defendant separately of the allegations surrounding his or her alleged participation in the fraud. *Id.* "[T]he complaint should inform each defendant of the nature

of [his or her] alleged participation in the fraud." ***DiVittorio v. Equidyne Extractive Industries, Inc.***, 822 F.2d 1242, 1247 (2nd Cir. 1987).

The heightened pleading requirement of Rule 9(b) applies to allegations of fraud contained in a RICO claim. ***Nitro Distributing, Inc. v. Alticor, Inc.***, 565 F.3d 417, 428 (8th Cir. 2009). This includes the allegations of mail and wire fraud used as predicate acts for a RICO claim. ***Id.*** (citing, ***Murr Plumbing Inc. v. Scherer Bros. Fin. Srvcs. Co.***, 48 F.3d 1066, 1069 (8th Cir. 1995)). Here, Plaintiffs' RICO claim falls far short of the Rule 9(b) particularity standard, as set forth more fully below.

**2. Plaintiffs have failed to plead a cognizable RICO claim.**

The Racketeer Influenced and Corrupt Organizations Act (RICO) was passed by Congress with the declared purpose of seeking to eradicate organized crime in the United States and to curb the infiltration of legitimate business organizations by racketeers. ***Russello v. United States***, 464 U.S. 16, 26-27 (1983); ***Sinclair v. Hawke***, 314 F.3d 934, 943 (8th Cir. 2003). Here, Plaintiffs' seek to distort both the language and spirit of RICO and seek to impugn the reputation of Paul Vogel, a well-known and reputable attorney, by equating his alleged delivery of professional services to the operation of an organized crime ring. This fails to state a cause of action against Mr. Vogel, and the Plaintiffs' RICO count against him must be dismissed. More specifically, no "enterprise" existed as defined by 18 U.S.C. §1962, and to the extent the Court finds such an "enterprise" has been pled, Plaintiffs' pleading insufficiently alleges Defendant Paul Vogel's participation in such an enterprise. Plaintiffs also fail to allege that Mr. Vogel conducted or directed the enterprise's affairs as required by the operation or management test, as they merely allege he provided legal and financial services. Furthermore, the Plaintiffs fail to adequately allege the predicate acts of racketeering activity in that the allegations regarding mail and wire

fraud do not identify individual defendants or give the specifics of the fraud in violation of Rule 9(b)'s specificity requirement.  Plaintiffs' RICO count in their Amended Complaint is, therefore, facially deficient and must be dismissed for failure to state a claim.

### a.   Plaintiffs fail to adequately plead the "enterprise" element of the RICO count.

RICO's private right of action is contained in **18 U.S.C. § 1964(c):**  "Any person injured in his business or property by reason of a violation of Section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorneys fee…"[3]  A plaintiff asserting a RICO claim under § 1962(c) must establish:

(1) the existence of an enterprise;

(2) the defendant's association with the enterprise;

(3) the defendant's participation in predicate acts of racketeering; and

(4) the defendant's actions constitute a pattern of racketeering actively.

*United HealthCare Corp. v. American Trade Ins.*, 88 F.3d 563, 570 (8th Cir. 1996) (citing, *S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985))**;** *Sinclair v. Hawke*, 314 F.3d 934, 943 (8th Cir. 2003).  A Plaintiff must also show that they suffered injury "by reason of the RICO violation." *United HealthCare Corp*, 88 F.3d at 570**.**

Under RICO, an enterprise includes "any individual, partnerships, corporations, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  **18 U.S.C. § 1961(4).**  The enterprise must be distinct from the person named as

---

[3] 18 U.S.C. § 1962(c) prohibits an employee or associate of an enterprise from conducting enterprise affairs or participating in enterprise affairs through a pattern of racketeering activity. Plaintiffs have brought their RICO claims under 18 U.S.C. § 1962(c) and their conspiracy claim under 18 U.S.C. § 1962(d).

the RICO defendant, and the enterprise must be distinct from the alleged pattern of racketeering activity. ***United HealthCare Corp***, 88 F.3d at 570. An enterprise is proven by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." ***U.S. v. Turkette***, 452 U.S. 576, 583 (1981), (cited in the civil context by ***Atlas Pile Driving Co.***, 886 F.2d at 995 (8th Cir 1989)).

In the instant RICO count, the Plaintiffs allege that Martin Sigillito & Associates is the enterprise utilized within the meaning of the RICO count. (Doc. 40, Amended Complaint ¶109).[4] What is Martin Sigillito & Associates? What type of organization is it? Who formed it and when? Where is it geographically located? We are left wanting when we look to the Amended Complaint to answer any of these questions. We are simply told that Martin Sigillito & Associates is the RICO enterprise.

The Plaintiff's Amended Complaint also does not contain clear allegations relating to any ongoing organization nor individuals functioning as a continuing unit. Is Martin Sigillito & Associates in fact Defendant Martin Sigillito? We are merely left with the declaratory statement that Martin Sigillito & Associates is the enterprise. The Amended Complaint in broad generalized terms speaks of participants in the Ponzi scheme (Doc. 40, ¶¶ 8-14); loans being obtained by misrepresentation (Doc. 40, ¶¶ 15-22); the diversion of 96.7% of loan proceeds (Doc. 40, ¶¶ 23-33); loan interest paid with new loan proceeds (Doc. 40, ¶¶ 34-40); and false asset/liability statements (Doc. 40, ¶¶ 41-55). However, nowhere does the Amended Complaint indicate how any of these activities relate to Martin Sigillito & Associates.

Not only do the Plaintifs fail to allege any basic information regarding Martin Sigillito & Associates, they also fail to allege any of the basic characteristics of a RICO enterprise. For

---

[4] Besides ¶109 the phrase Martin Sigillito & Associates is mentioned in ¶¶ 90, 92, 97, 107, and 110.

purposes of RICO, an enterprise has three basic characteristics:  "(1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that inherent in the conduct or pattern of racketeering." *Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986, 995 (8th Cir. 1989); *United States v. Lemm*, 680 F.2d 1193, 1198 (8th Cir. 1982).

Examined in the light of *United HealthCare Corp* and *Atlas Pile Driving Co.* the RICO count does not meet the pleading standards enunciated for courts in the Eighth Circuit.  Nowhere within the Amended Complaint do Plaintiffs plead a common or shared purpose of Martin Sigillito & Associates, and more importantly, they do not plead that Defendant Paul Vogel engaged in any type of a common or shared purpose with this alleged enterprise.  Similarly, the Amended Complaint is silent as to any allegations of "continuity of structure and personnel" with regard to the alleged enterprise.  Again, Defendant Paul Vogel is not alleged to have had any type of relationship with the enterprise, let alone a continuous relationship.  Lastly, the Amended Complaint must allege, in some form, that the enterprise maintained an "ascertainable structure" distinct from the conduct of racketeering.  *United States v. Lemm*, 680 F.2d 1193, 1198 (8th Cir. 1982).  As already stated, we are at a loss to determine what is Martin Sigillito & Associates, let alone if it maintained an "ascertainable structure."

The Amended Complaint contains no allegations that demonstrate the existence of an enterprise within the meaning of the RICO statute, only conclusory, self-serving statements to the effect that Defendant Paul Vogel is part of such an enterprise.  Plaintiffs have failed to properly plead the existence of an enterprise in accordance with the statutory text and binding case law. Accordingly, the RICO count against Defendant Paul Vogel should be dismissed.

### b. Defendant Paul Vogel did not "conduct" or "direct" the enterprise's affairs.

In ***Reves v. Earnst & Young***, the Supreme Court held that "'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' (§1962(c)), one must participate in the operation or management of the enterprise itself." 507 U.S. 170, 185 (1983).  The operation or management test thus requires that a defendant engage in "directing the enterprise's affairs." ***Id.*** This test is built upon the recognition that Congress did not mean for § 1962(c) to penalize everyone who is employed by or associated with a RICO enterprise, but "only those who, by virtue of their association or employment, play a part in directing the enterprise's affairs.  Furnishing a client with ordinary professional assistance, even when the client happens to be a RICO enterprise, will not normally rise to the level of participation sufficient to satisfy the Supreme Court's pronouncement in *Reves*." ***Handen v. Lemaire,*** 112 F.3d 1339, 1348 (8th Cir. 1997).  As such, "an attorney or other professional does not conduct an enterprise's affairs through run-of-the mill provision of professional services." ***Id.*** See also**, *Nolte v. Pearson***, 994 F.2d 1311, 1317 (8th Cir. 1973) (holding that a RICO claim could not stand when "there [was] no evidence suggesting that the attorneys participated in the operation or management of the enterprise").  RICO is not a surrogate for professional malpractice actions. ***Handen,*** 112 F.3d at 1348.

In ***Baumer v. Pachl***, for example, the plaintiff investors alleged that a company defrauded them through the sale of Limited Partnership interests.  8 F.3d 1341 (9th Cir. 1993).  The plaintiffs sought to hold the company's attorneys liable under § 1962(c) for sending to the Department of Corporations letters "designed to forestall and cover up a fraud by minimizing or mischaracterizing the alleged improper activities of the company." ***Id.*** at 1342.  The plaintiffs further alleged that the attorney knowingly filed false partnership agreements in furtherance of the fraud. ***Id.*** at 1342-43**.**  The 9th Circuit held that the Complaint failed to state a claim because the

attorney did not play any part in directing the affairs of the enterprise; rather his role was limited to providing legal services to the partnership. *Id.* at 1344. The Court explained: "whether [the attorney] rendered his service well or poorly, properly or improperly, is irrelevant to the *Reves* test." *Id*. at 1344.

Several other Circuits, including the Eighth Circuit, likewise have held that an attorney is not liable under the operation or management test when he does not participate in directing the enterprise's affairs, irrespective of the legal services performed. *See*, *Nolte*, 944 F.2d at 1317 (affirming dismissal of a § 1962(c) claim because [there was] no evidence suggesting that the attorneys participated in the operation or management of the enterprise); *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2nd Cir. 1994) (affirming dismissal of a § 1962(c) claim because Plaintiffs adduced no evidence to show that [the attorney-Defendant] participated in the management or direction of a RICO enterprise.)

The 8th Circuit's *Handen* decision illustrates "the line between traditional rendition of legal services and active participation in directing the enterprise." 112 F.3d at 1349. There, the illicit enterprise was a "bankruptcy estate" that the Defendant lawyers created to discharge their clients' debts. *Id.* at 1351. The Court found that the lawyers in *Handen* "t[ook] the lead in making important decisions concerning the operation of the enterprise," and played some role in the conception and the execution of the enterprise's affairs. *Id.* at 1350.

By contrast, Plaintiffs do not allege that Defendant Paul Vogel conceived or executed the alleged enterprise's illicit Ponzi scheme. Nor do Plaintiffs even allege generally that Mr. Vogel had any input into the operation or management of Martin Sigillito & Associates. As such, Plaintiffs' RICO count should be dismissed as Plaintiffs do not allege that Mr. Vogel was

involved in the operation or management of Martin Sigillito & Associates, but instead allege that he merely provided legal services.

Even if this Court were to conclude that Mr. Vogel's alleged actions in this case were outside the scope of normal legal services, his alleged actions closely parallel those of a financial auditor, which also normally fail the operation or management test.  In ***Reves v. Ernst & Young,*** the United States Supreme Court found that Arthur Young's actions in providing a financial audit to a co-op did not pass the operation or management test, and therefore, Arthur Young could not be liable for an alleged RICO claim.  507 U.S. 170, 186 (1993).  In that case, the Farmer's Cooperative of Arkansas and Oklahoma raised money for operating expenses by selling promissory notes payable on demand, which its general manager, Jack White, then began taking to finance the construction of a gasahol plant by his company, White Flame.  ***Id.*** at 172.  Eventually the Co-op purchased White Flame from Mr. White.  ***Id.***  Arthur Young was hired to perform a financial audit of the Co-op, which included determining White Flame's fixed asset value.  ***Id***.  Mr. Drozal, the individual auditor, relied upon the books as prepared by Gene Kuykendall, who was the accountant for the Co-op and White Flame and who had been convicted of tax fraud along with Mr. White before the audit.  ***Id***.  Mr. Drozal concluded that White Flame's fixed asset value was approximately $4.5million, and chose to utilize this figure instead of the company's fair market value which would have rendered the Co-op insolvent.  ***Id***.

Arthur Young then presented its audit to the Co-op's board, but did not tell the board of its choice or that if the other choice was made that the Co-op would be insolvent.  ***Id***.  Instead, only a footnote was provided which expressed doubt that the investment could ever be recovered and that White Flame was operating at a loss.  ***Id***.  When the Co-op later held it's annual meeting, the Co-op, through a partner of Arthur Young, provided a condensed financial statement to the members of

the Co-op which did not provide the footnote.  *Id.*  When the Co-op later filed for bankruptcy, a class action suit on behalf of all note holders was filed alleging a RICO claim against Arthur Young and others.  *Id*. at 175**.**

The United States Supreme Court articulated the operation or management test and found that Arthur Young did not meet this test, and therefore, was not liable under RICO.  *Id.*  at 186**.**  Ultimately the Court concluded that Arthur Young did not conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs and did not participate in the operation or management of the enterprise itself, as the failure to tell the Co-op's board that the plant should have been given its fair market value did not rise to the level of participation requried.  *Id.*

Other circuits have also applied the operation or management test, and following the ***Reves*** court, have also found that financial audits and providing financial services are generally insufficient to find RICO liability.  *See***, *Stone v. Kirk***, 8 F.3d 1079 (6th cir. 1993) (finding that an accountant was not liable under RICO even though he received hidden commissions on sales he made of tax shelters, which were found invalid by the IRS, and which he had represented were allowed by the IRS and were good investments); ***University of Maryland at Baltimore v. Peat, Marwick, Main & Co.***, 996 F.2d 1534 (3rd cir. 1993).

More specifically, the Court in the ***University of Maryland*** case found that even though an independent auditor issued unqualified auditor's opinions on Mutual Fire's financial statements informing the public that the auditor had a reasonable basis for concluding Mutual Fire was well financed and its financial statements were accurate, did not pass the operation or management test.  *Id.* at 1538**.**  This holding came despite the fact that the auditor ignored numerous signs that Mutual Fire was in a precarious financial condition, that the financial statements were in fact false, the auditor had no reasonable basis to issue the unqualified opinions, the auditor had attended

Mutual Fire's board of director meetings, and the auditor had provided other additional financial and accounting services. *Id*. The Court reasoned that the plaintiffs had not alleged that the auditor had any part in the operating or managing of the affairs of Mutual Fire, and that the "complaint, when distilled to its essence, [was] nothing more than an allegation that [the auditor] performed materially deficient financial services." *Id*.

Here the Plaintiffs allege no facts suggesting that Defendant Paul Vogel directed the operation or management of the alleged RICO enterprise.[5] Paul Vogel's name is mentioned in the RICO count 16 times.[6] Of those 16 entries, the Complaint never alleges that he performed work for Martin Sigillito & Associates; never alleges that he had an ownership interest in Martin Sigillito & Associates; and it never alleges that he had any role in Martin Sigillito & Associates. Rather it alleges that he prepared a Due Diligence Report,[7] that he prepared Loan Agreements from 2008 through 2010,[8] and that he received an undisclosed finder's fee in loan brokerage fees.[9] (See, Doc. 40.)   Nowhere in the Amended Complaint, however, does it allege that he fraudulently created the Due Diligence Reports.  The Amended Complaint also fails to allege that these Loan Agreements were fraudulently prepared by Mr. Vogel or prepared by him in any capacity other than as an attorney.  As to the alleged finder's fee, there is no allegation of fraud or depiction of

---

[5] In fact, the status of the enterprise in this case is ambiguous at best.  The only mention of an enterprise in the entire Complaint is at ¶ 109 (Doc. 40) where the Plaintiff states:  "Martin Sigillito and Associates is the RICO enterprise."

[6] Paul Vogel's name appears in the Complaint (Doc. 40) in ¶¶ 11, 12, 18, 19, 21, 36, 53, 54, 64, 66, 67, 68, 69, 82, 85, and 94.

[7] Doc. 40, ¶¶ 18, 21, 36, 53, and 54.

[8] Doc. 40 ¶ 82.

[9] Doc. 40 ¶¶ 18 and 94.

actions which demonstrate management or control, merely a statement that Defendant Paul Vogel received loan brokerage fees.

Like the complaint in *University of Maryland,* when the Amended Complaint in this case is distilled to its essence, the allegations against Paul Vogel are that he allegedly performed materially deficient financial and legal services.[10]  As set forth in *Reves, University of Maryland, Nolte,* and *Handen* this is insufficient to pass the operation or management test and give rise to RICO liability.   The Plaintiffs' Amended Complaint fails to state a cause of action against Mr. Vogel under RICO and should be dismissed.

> **3.  Plaintiffs fail to allege the predicate acts of mail fraud, wire fraud, and money laundering with sufficient particularity.**

As noted above, Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened pleading standard in fraud cases and requires that the circumstances constituting fraud be stated with particularity.  *Great Plains Trust Co. v. Union Pacific Railroad Co.*, 492 F.3d 986, 995 (8th Cir. 2007).  The particularity requirements of Rule 9(b) apply to allegations of mail and wire fraud when used as predicate acts for a RICO claim.  *Murr Pluming, Inv. v. Scherer Brothers Financial Services*, 48 F.3d 1066, 1070 (8th Cir. 1995).  The circumstances constituting mail and wire fraud that must be pled include such matters as "the time, place, and contents of false representations, as well as the identity of the person making the misrepresentations and what was obtained or given up thereby." *Id*.  *See also*, *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982), adhered to on reh'g, 710 F.2d 1361 (8th Cir.) (en banc), cert denied, 464 U.S. 1008 (1983)).  Moreover, to establish mail fraud, the plaintiff must show the existence of a plan or scheme to defraud, that it was foreseeable that the defendant's scheme would cause the mails to be used, and

---

[10] It should also be noted that Mr. Vogel is sued in this current complaint for breach of professional duties as a lawyer and an accountant.  Count 6 is subject to this Motion to Dismiss as well.

that the use of the mails was for the purpose of carrying out the fraudulent scheme.  ***Atlas Pile Driving Co. v. DiCon Financial Co.***, 886 F.2d 986, 991 (1989).  The term 'scheme to defraud' connotes some degree of planning by the perpetrator, and it is essential that the evidence show the defendant entertained an intent to defraud.  ***Id.***

In the case before the Court, Plaintiffs' entire Amended Complaint, including those portions regarding mail and wire fraud, is replete with assertions that lump together all the Defendants.  For example, the Complaint contains the following allegations:

- Defendants mailed *over one hundred* loan agreements … to the Plaintiffs during the past four years which were made to appear as if they were from Derek Smith … **Doc. 40 ¶ 113.** (emphasis in the original).

- Defendants mailed *over fifty letters* with checks for interest payments on Derek Smith loans during the past four years…  **Doc. 40 ¶ 115.** (emphasis in the original).

- Defendants received in the mail *over fifty letters* with checks from the Plaintiffs for loans to Derek Smith during the past four years…  **Doc. 40 ¶ 116.** (emphasis in the original).

- Defendant Martin Sigillito and co-defendants sent *over one hundred interstate faxes* with copies of the Plaintiffs' loan documents during the past four years from his St. Louis office to various brokers in Ohio, Arkansas and Arizona and also to Plaintiffs' home or businesses … **Doc. 40 ¶ 120.** (emphasis in the original).

- Defendant Martin Sigillito and co-defendants send[sic] *over one hundred interstate faxes* to Scott Brown in Kansas and to Derek Smith in England during the past four years … **Doc 40. ¶ 121.** (emphasis in the original).

- Defendant Martin Sigillito and co-defendants *telephoned* the Plaintiffs many times during the past four years in Arizona, Arkansas, Michigan and Ohio for an accumulated total of more than *five hundred interstate telephone calls* during the past four years … **Doc. 40 ¶ 122.** (emphasis in the original).

- For the past four years Defendants committed multiple acts of mail and wire fraud against the Plaintiffs in violation of 18 U.S.C. §§ 1941, 1943 and money laundering in violation of 18 U.S.C. § 1956.  Each act of mail and wire fraud

contributes separate instances of interrelated racketeering activity.   **Doc. 40, ¶136.**

These are just a few examples of the Plaintiffs' utter failure to detail each Defendants' role in the alleged fraud, as is required by Rule 9(b) and case law interpreting this rule.  This deficiency is only compounded by the allegation that "[w]henever in this Complaint a reference is made to any act done by any Defendant acting individually, these allegations shall mean that the acts of the individual Defendant were done with the knowledge, consent, approval and ratification of the other Defendants and are *thereby attributed to each Defendant* individually, jointly and severally…" (Doc. 40 ¶ 6. (emphasis added).  See also, Doc. 40 ¶ 104.)

Approaching a similar situation, a district court within the Eighth Circuit has held:

Plaintiff's fraud claims fail to satisfy Rule 9(b) because the allegations cluster all the Defendants together without the required specificity to discern the respective roles of the individual Defendants in the allege fraud scheme… Plaintiffs generally accuse "Defendants" and "Jani-King" of misrepresentations but never specify which Defendant is responsible for which alleged misrepresentation.

*Moua v. Jani-King of Minnesota*, 613 F.Supp. 2d 1103, 1111 (D. Minn 2009).

To avoid this problem,

when a complaint accuses multiple defendants of participating in the scheme to defraud, the plaintiff must take care to identify which of them was responsible for the individual acts of fraud.  *If the requirements of Rule 9(b) were otherwise, a defendant would be forced to "guess which allegations in the complaint were pleaded against it, rendering it difficult (if not impossible) to adequately frame a response, which is precisely the problem that Rule 9(b) was designed to remedy.*

*Id.* (emphasis added, internal quotations and citations omitted).

The lack of specificity in the Plaintiffs' pleadings has caused exactly the same problem addressed by the Court in *Jani-King*.  Because the individual actions of each Defendant are not specified and are attributed to all Defendants, Mr. Vogel is left with the impossibility of providing a response, as he has to now guess which allegations in the complaint are pled against him.  As this

is clearly inadequate under the pleading requirements of Rule 9(b), the Plaintiffs' RICO count should be dismissed.

The Amended Complaint is not only deficient under the "who" category, but as well as under the "what," "where," "when," and "how" categories which are required to be pled under Rule 9(b). ***Great Plains Trust***, 492 F.3d 986, 995 (8th Cir. 2007). Plaintiffs allege multiple mailings were made over a four year period of time**.** (Doc. 40, ¶¶ 113-117). In part, the Complaint alleges that Defendants mailed over 100 loan agreements, over 500 IRA account statements, over 50 letters with checks for interest payments, and over 50 letters with checks from the Plaintiffs with loans to Derek Smith. (Doc. 40 ¶ 113-116). Likewise, Plaintiffs allege multiple acts of wire fraud over a four year period of time. (Doc. 40 ¶¶ 120-126). All of these paragraphs allege that "Martin Sigillito and the Co-Defendants" participated in various acts of using the wires in interstate commerce including over 100 interstate faxes with copies of loan documents, over 100 interstate faxes to Scott Brown and Derek Smith, over 500 interstate phone calls to Plaintiffs, over 1,000 interstate phone calls with Derek Smith, over 500 emails to the Plaintiffs, and over 100 electronic money wire transfers from the Plaintiffs to other Defendants. (Doc. 40, ¶¶ 120-126). Plaintiffs fail to state the specific number of letters, phone calls, emails, faxes or wire transfers that were a part of this alleged scheme. They also fail to plead the date or dates when these actions were taken, the identity of the person sending or receiving each phone call, email, fax, or wire transfer, and most importantly fail to allege the contents of each of these alleged incidents of mail and wire fraud. The Amended Complaint also makes little or no effort to allege, as it must in pleadings based upon fraud, how the various telephone conversations or the mailings or other forms of wire communication were part of the overall scheme to defraud, or whether there was a specific intent to defraud with respect to each predicate act.

The same deficiencies in pleading present in the mail and wire fraud allegations are also present in the money laundering allegation.  The paragraphs regarding money laudering are found in Count I – Violation of RICO which purports to also be asserted against Paul Vogel.  However many of the allegations are directed to Martin Sigillito and his use of the funds to pay for his "lavish lifestyle." (Doc. 40, ¶¶ 132-134).  As such, it appears that the use of money laundering as a predicate act should only be applicable to Martin Sigillito.

However, there is one paragraph that could arguably be directed to Paul Vogel: paragraph 130, which is an allegation against *all* of the Defendants.  It provides:

> Defendants made *over one hundred* interest and principal payments to Plaintiffs during [sic] past four years making it appear that the payments were from Derek Smith.   In reality the payments were from the fraudulent diversion of the Plaintiff's[sic] loan proceeds to Derek Smith, in violation of 18 U.S.C. § 1956.

(Doc. 40, ¶ 130). (emphasis in the original).  As stated above, this type of pleadings is deficient under Rule 9(b) as it does not give fundamental and basic information regarding the allegation, such as who specifically made the interest payments, when these payments were made, the dollar amount of the payments, and to whom the payments were made.  Without this basic information it is impossible for Mr. Vogel to determine if this allegation is even directed towards him, yet alone to respond to it if it is.  As this is clearly deficient under Rule 9(b), the money laundering allegation fails to state a claim, and as such, is an insufficient basis for a RICO claim.

This form of pleading leaves Defendant Paul Vogel unable to defend himself as to the time, place, contents of false representations, because in most cases, the identity of the individual making the alleged misrepresentations is not given.  Moreover, it is impossible for Defendant Paul Vogel, as well as the remaining Defendants, to conclude which alleged acts and occurrences, or even which Defendant various paragraphs of the Amended Complaint are leveled against.  As such, Defendant Paul Vogel is forced to speculate which allegations in the Amended Complaint are

asserted against him, rendering it impossible to frame a response.  Because the Amended Complaint is woefully inadequate in this respect, the RICO count should be dismissed as it does not properly plead predicate acts as required for a RICO claim.

## E.    RICO CONSPIRACY VIOLATION OF 18 U.S.C. 1962(D) – COUNT 2

Count II of Plaintiffs' Amended Complaint also alleges that the Defendants conspired to violate the Racketeer Influenced and Corrupt Organizations Act in violation of 18 U.S.C. § 1962(d).  Specifically § 1962(d) provides that: "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section."  **18 U.S.C. § 1962(d).**  In order to adequately allege a RICO conspiracy, the Plaintiffs must allege all of the previously discussed elements of a substantive RICO claim, and that the Defendant "objectively manifested an agreement to participate directly, or indirectly, in the affairs of an enterprise through the commission of two or more predicate crimes."  ***United States v. Bennett,*** 44 F.3d 1364, 1372 (8th Cir. 1995).  As set forth in the prior sections of this memorandum, Plaintiffs have failed to adequately allege the substantive elements of RICO, and so this conspiracy count must also be dismissed. Moreover, courts have been clear that a finding of a substantive violation of RICO does not necessarily mean that a RICO conspiracy also exists.  ***Id.***  Proof of an individual's participation in an enterprise will not necessarily establish his or her membership in a conspiracy as a RICO substantive charge is not a conspiracy.  ***Id.***

The Plaintiffs' Amended Complaint merely states that Defendants "conspired, planned and schemed" with one another to effectuate the alleged RICO violation.  Only bare assertions of a conspiracy are ever given.  For example, Plaintiffs allege:

- Defendants conspired and agreed with each other to engage in the conducted, or attempted conduct stated above, and also conspired and agreed to aid each other in the commission of acts of mail and wire fraud, or money laundering, as stated above. (Doc. 40, ¶ 142)

27

-   Defendants conspired, planned and schemed to use Martin Sigillito &
    Associates as a racketeering enterprise through a pattern of racketeering activity
    in violation of 18 U.S.C. § 1962(c).  Defendants agreed to conduct or participate
    in the affairs of Martin Sigillito & Associates and agreed to commit acts of mail
    and wire fraud, or money laundering, as their regular way of conducting Martin
    Sigillito & Associates' affairs.  (Doc. 40, ¶ 143).

-   Each of the Defendants combined, conspired and confederated with each other
    to commit a pattern of racketeering activity by committing multiple acts of mail
    and wire fraud and money laundering, and thereby violated 18 U.S.C. § 1962(d)
    by conspiring to violate 18 U.S.C. 1962(c).  (Doc. 40, ¶ 144).

These are nothing more than bare allegations which amount to asserting that because Defendants

allegedly violated a substantive provision of RICO, Defendants had to have violated the RICO

conspiracy provision as well.  This is insufficient to meet the pleading requirements of Rule

8(a)(2) of the Federal Rules of Civil Procedure.  These allegations amount to mere labels and

conclusions or a bare recitation of the elements of the purported cause of action, which do not raise

a right to relief above the speculative level.  This is insufficient as a matter of law.  ***Bell Atlantic

Corp. v.*** **Twombly,** 550 U.S. 544 (2007).  If these types of allegations were sufficient, then the

distinction between a substantive RICO claim and a RICO conspiracy claim would be abolished.

This distinction is mandated by statute and case law.  <u>*See*</u>, ***United States v. Bennett,*** 44 F.3d 1364,

1372 (8th Cir. 1995).

Furthermore Plaintiffs' claim of RICO conspiracy must fail as the Plaintiffs have failed to

adequately plead a substantive RICO violation.  As demonstrated above, the Amended Complaint

does not properly allege that an enterprise existed, nor that the Defendant Paul Vogel "conducted"

or "directed" the affairs of any enterprise.  In addition, the Amended Complaint fails to allege with

any particularity the alleged predicate acts of mail and wire fraud.  Hence, a substantive RICO

claim has not been properly alleged, and it is impossible for the Defendant Paul Vogel, or any

other Defendant, to have conspired to commit a RICO violation.  A conspiracy claim under 18

U.S.C. § 1962(d) fails when the substantive claim based on § 1962(c) is without merit.  ***Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc.***, 187 F.3d 941, 954 (8th Cir. 1999) (affirming dismissal of a civil RICO conspiracy claim by employees of a pharmaceutical company who alleged that company and others conspired to market products in an unlawful manner by promoting off-label uses because employees did not sustain injury caused by a RICO predicate act); ***Kipler v. City of Arnold, MO***, 2009 WL 2208404 (E.D. Mo 2009)**.** Because Plaintiffs have not properly pled that Defendant Paul Vogel formed an enterprise or controlled or directed any predicate offenses of mail and wire fraud, the conspiracy claim under RICO fails to state a cause of action for which relief may be granted.  Count 2 must be dismissed for this reason.

### III.  <u>CONCLUSION</u>

For all the reasons stated herein, Counts 1, 2, 6, 7 and 8 of Plaintiff's Amended Complaint should be dismissed, with prejudice, against Defendants Paul Vogel and Lynn Vogel for the reason that they each fail to state a claim upon which relief can be granted against these Defendants. Defendants further pray for such other and further relief as this Court deems just and proper under the circumstances.

**DANNA MCKITRICK, P.C.**

BY:   /s/ Daniel G. Tobben
**Daniel G. Tobben**, #24219MO
**Laura Gerdes Long**, #40331MO
**Kara D. Helmuth**, #62183MO
7701 Forsyth Blvd., Suite 800
St. Louis, MO  63105-3907
(314) 726-1000/(314) 725-6592 fax
E-mail:  dtobben@dmfirm.com
E-mail:  llong@dmfirm.com
E-mail:  khelmuth@dmfirm.com

**JENSEN, BARTLETT & SCHELP, LLC**
**Jeff Jensen**
**Mitch Stevens**
222 S. Central Avenue, Suite 110
St. Louis, MO 63105
(314) 725-3939 / (314) 725-1507 (fax)
E-mail: jjensen@jbslawyers.com

**ATTORNEYS FOR DEFENDANTS**
**PAUL VOGEL AND LYNN VOGEL**

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that I caused true and correct copies of the foregoing document to be served upon the parties receiving notice through the Court's ECF system by filing with the Court's ECF system at the date and time filed:

**Vanessa C. Antoniou**
Law Offices of Vanessa C. Antoniou
21 N. Meramec
St. Louis, MO 63105
**ATTORNEY FOR DEFENDANT ROLAND BAER**

**Sarah K. Cahill**
**Terrance J. Good**
Lashly and Baer, P.C.
714 Locust Street
St. Louis, MO 63101-1699
**ATTORNEYS FOR DEFENDANT HELFREY & NEIERS, P.C.**

**Joseph P. Conran**
**Thomas J. DeGroot**
**Shirley A. Padmore**
Husch Blackwell, LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
**ATTORNEYS FOR DEFENDANT ENTERPRISE BANK & TRUST**

**Robert T. Haar**
**Margaret N. Kuhlman**
Haar and Woods, LLP
1010 Market Street, Suite 1620
St. Louis, MO 63101
**ATTORNEYS FOR DEFENDANT SPENCER, FAYNE,**
**BRITT AND BROWN, LLP**

**Thomas J. Plunkert**
Leritz and Plunkert, P.C.
555 Washington Avenue, Suite 600
St. Louis, MO 63101
**ATTORNEY FOR MARTIN T. SIGILLITO**

**Douglas P. Roller**
Roller Law Office, LLC
120 S. Central, Suite 1510
Clayton, MO 63105
**ATTORNEY FOR DEFENDANTS**
**MARTIN T. SIGILLITO AND MINDY FINAN**

**Jeffrey B. Jensen**
**Mitchell F. Stevens**
Jensen and Bartlett, LLC
222 S. Central Avenue, Suite 110
St. Louis, MO 63105
**CO-COUNSEL FOR DEFENDANTS**
**LYNN VOGEL AND PAUL VOGEL**

**Shahzad Naseem**
Berkowitz Oliver, LLP
2600 Grand Boulevard, Suite 1200
Kansas City, MO 64108
**ATTORNEY FOR DEFENDANTS**
**AMY BROWN AND J. SCOTT BROWN**

**Sebastian Rucci**
Law Offices of Sebastian Rucci
401 E. Ocean Blvd., Suite 200
Long Beach, CA 90802-4993
**ATTORNEY FOR PLAINTIFFS**

/s/ Daniel G. Tobben