**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

PHILLIP L. ROSEMANN et al.,

       Plaintiffs,

vs.

MARTIN T. SIGILLITO et al.,

       Defendants.

No. 10-CV-1165-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **RELEVANT PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . **2**

III.   **RELEVANT FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . **2**
     A.    *Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
     B.    *Plaintiffs' Claims Against Millennium* . . . . . . . . . . . . . . . . . . . . **3**

IV.   **ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
     A.    *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
     B.    *Discussion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
          1.    *Incorporation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
               a.    *2001 and 2002 Adoption Agreements* . . . . . . . . . . . . **7**
               b.    *2003 through 2005 Adoption Agreements* . . . . . . . . **12**
               c.    *2006 through 2008 Adoption Agreements* . . . . . . . . **13**
          2.    *Plaintiffs' remaining arguments* . . . . . . . . . . . . . . . . . . **14**
               a.    *Incorporation* . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
               b.    *Arbitration provision* . . . . . . . . . . . . . . . . . . . . . **16**
          3.    *Scope of arbitration provision* . . . . . . . . . . . . . . . . . . . **19**
          4.    *Whether dismissal is appropriate* . . . . . . . . . . . . . . . . . **20**

V.    **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

# I. INTRODUCTION

The matter before the court is Defendant Millennium Trust Company, LLC's ("Millennium") "Motion to Compel Arbitration and Dismiss" ("Motion") (docket no. 315).

# II. RELEVANT PROCEDURAL BACKGROUND

On January 2, 2012, Plaintiff Phillip L. Rosemann and eighty-five other named Plaintiffs filed a Second Amended Complaint (docket no. 252) against ten unnamed and sixteen named Defendants, including Millennium. On April 23, 2012, Millennium filed the Motion. On May 7, 2012, Plaintiffs filed a Resistance (docket no. 325). On May 8, 2012, Millennium filed an unopposed "Motion to Correct" (docket no. 326), in which it explained that it inadvertently filed one exhibit twice, instead of filing two separate exhibits, and sought leave of court to correct the error. The court subsequently entered an Order (docket no. 334) granting the Motion to Correct. On May 9, 2012, Plaintiffs filed a Supplemental Resistance (docket no. 328) responding to the new exhibit. On May 21, 2012, Millennium filed a Reply (docket no. 337). On May 30, 2012, Plaintiffs filed a Sur-Reply (docket no. 345), with leave of court. On May 31, 2012, Millennium filed an Objection (docket no. 346) to Plaintiffs' Sur-Reply. Neither party requests a hearing on the Motion and the court finds that a hearing is unnecessary. The Motion is fully submitted and ready for decision.

# III. RELEVANT FACTUAL BACKGROUND

## A. Parties

Plaintiffs are eighty-five individuals who are citizens of various states and one company, Braithwaite Consulting Limited. Millennium is a closely-held limited liability company with its principal place of business in Oak Brook, Illinois. From approximately 2001 until 2008, Millennium served as a qualified custodian of self-directed individual retirement accounts ("IRAs") for approximately thirty-three Plaintiffs pursuant to 26

U.S.C. § 408(h).

### B. *Plaintiffs' Claims Against Millennium*

In the Second Amended Complaint, Plaintiffs[1] allege two causes of action against Millennium. In Count 2, Plaintiffs allege that Millennium conspired to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. In Count 5, Plaintiffs allege that Millennium was negligent in its provision of professional services.

### IV. *ANALYSIS*

In the Motion, Millennium asks the court to compel Plaintiffs to arbitrate their claims against Millennium and to dismiss the action. Millennium maintains that each Plaintiff signed an Adoption Agreement wherein he or she established a self-directed IRA with Millennium, and, under the terms of each respective Adoption Agreement, each Plaintiff agreed to be bound by the terms of a Custodial Agreement. Millennium claims that the Custodial Agreement, in turn, contains an arbitration clause, which the court should enforce.

---

[1] As Millennium points out, "Plaintiffs use the generic term 'Plaintiffs' in the claims against [Millennium]. However, only thirty-three Plaintiffs had a relationship with . . . [Millennium]." Memorandum of Law in Support of the Motion ("Millennium Brief") (docket no. 316) at 2 n.1. The Plaintiffs that established self-directed IRAs with Millennium include: (1) Melba J. Aguilar; (2) Richard Aguilar; (3) Patricia N. Ambrose; (4) Nina M. Blaylock; (5) David L. Caldwell; (6) Teresa Diane Caldwell; (7) Albert D. Carrell; (8) Jerry Cronkhite; (9) Samuel R. Currier; (10) Carol K. Green; (11) Odis A. Hash (spelled Otis Hash in the caption of the case); (12) Donna Sue Hogshooter; (13) Audrey L. Holland; (14) John R. Holland; (15) Donald W. Horner; (16) Stanley C. Kuhlo, Jr.; (17) Carl A. Lavender; (18) Wanda Lavender; (19) Stanko K. Matayo; (20) Lorena B. Messenger; (21) Bob K. Moore; (22) Rudolf Owens (spelled Rudolph Owens in the caption of the case); (23) Ronald Pastor; (24) Iris Pearson (spelled Ira Pearson in the caption of the case); (25) Carol B. Phillips; (26) William H. Phillips; (27) Buddy M. Quessenberry; (28) Betty J. Rollon; (29) Leonard Roman; (30) Phillip L. Rosemann; (31) David C. Schultz; (32) Winston D. Vines; and (33) Loren Winterhof. For ease of reading, the court will refer to Plaintiffs collectively.

Plaintiffs resist, arguing that: (1) the Adoption Agreements do not expressly agree to arbitration; (2) Plaintiffs signed three different classes of Adoption Agreements with Millennium, none of which incorporate a purported Custodial Agreement by reference; (3) the documents Millennium provided to the court do not have the same titles as the documents referenced in the various Adoption Agreements; (4) the documents Millennium provided do not include choice-of-law provisions; (5) there is no clear and unmistakable evidence of intent to arbitrate; (6) Millennium cannot incorporate by reference documents not yet in existence; (7) the incorporating language does not sufficiently describe an agreement to arbitrate because it does not include certain required language; and (8) the arbitration clause is unconscionable.

## A. Applicable Law

"Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (1994), 'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.'" *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 679 (8th Cir. 2001) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). The FAA "makes written arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract.'" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629-30 (2009) (quoting 9 U.S.C. § 2). The FAA applies to contracts "involving commerce." 9 U.S.C. § 2. The United States Supreme Court has held that "the word 'involving' is broad and is indeed the functional equivalent of "affecting." *Allied-Bruce Terminix, Cos. v. Dobson*, 513 U.S. 265, 273-274 (1995). The parties appear to agree, and the court finds, that the FAA governs the contracts at issue in this case. Accordingly, the court will undertake its review under the FAA, which "evinces a 'liberal federal policy favoring arbitration agreements.'" *Gannon*, 262 F.3d at 680 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

"Before a party may be compelled to arbitrate under the [FAA], the district court must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement." *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 694-95 (8th Cir. 1994). "When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Aurthur Andersen LLP*, 556 U.S. at 630-31 (noting that state law applies to determine which contracts are binding and enforceable).

Millennium argues that Illinois law should control this dispute because there is an Illinois choice-of-law provision in the Custodial Agreement. However, a choice-of-law provision in a contract "can have no effect until the court determines the validity of the contract itself." *John T. Jones Constr. Co. v. Hoot Gen. Constr. Co., Inc.*, 613 F.3d 778, 782-83 (8th Cir. 2010). Because district courts, whether sitting in diversity or deciding supplemental state law claims, are required to use the choice-of-law rules for the state in which it sits, *see DCS Sanitation Mgmt., Inc. v. Castillo*, 435 F.3d 892, 895 (8th Cir. 2006), the court must apply Missouri law in determining whether the Adoption Agreements incorporated by reference the 2008 version of the Custodial Agreement.

"The cardinal principle for contract interpretation is to ascertain the intention of the parties and to give effect to that intent." *Butler v. Mitchell-Hugeback, Inc.*, 895 S.W.2d 15, 21 (Mo. 1995) (en banc). "'In determining the intent of the parties to a contract, [the court] review[s] the terms of a contract as a whole, not in isolation.'" *Lacey v. State Bd. of Registration for the Healing Arts*, 131 S.W.3d 831, 838 (Mo. Ct. App. 2004) (quoting *Tuttle v. Muenks*, 21 S.W.3d 6, 11 (Mo. Ct. App. 2000)).

> "Where the contract is unambiguous, a court will ascertain the intent of the parties from the contract alone and will not resort to construction." *Monsanto Co. v. Garst Seed Co.*, 241

5

S.W.3d 401, 407 (Mo. Ct. App. 2007). A court will not find that a contract is ambiguous merely because the parties disagree as to the construction of the contract. *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. 2003). Rather, a court must examine whether the contract is "*reasonably* susceptible to different constructions." *Burrus v. HBE Corp.*, 211 S.W.3d 613, 617 (Mo. Ct. App. 2006) (emphasis added). A court will presume that "the intent of the parties is expressed by the natural and ordinary meaning of their language." *Id.* (quotation omitted). "The terms of a contract are read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning." *Dunn Indus.*, 112 S.W.3d at 428 (citations omitted). "[E]ach term of a contract is construed to avoid rendering other terms meaningless." *Id.* If any uncertainty exists in a contract, the language will "be construed against the drafter." *Livers Bronze, Inc. v. Turner Const. Co.*, 264 S.W.3d 638, 641-42 (Mo. Ct. App. 2008).

*Liberty Mut. Fire Ins. Co. v. Centimark Corp.*, No. 4:08CV230-DJS2009 WL 1588454, at *3 (E.D. Mo. June 5, 2009) (internal citations altered).

"[T]he parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document, including a separate agreement to which they are not parties, and including a separate document which is unsigned." *Intertel, Inc. v. Sedgwick Claims Mgmt. Servs., Inc.*, 204 S.W.3d 183, 196 (Mo. Ct. App. 2006). "Matters incorporated into contract by reference are as much a part of the contract as if they had been set out in the contract *in haec verba*." *Id.* However, a document can only be incorporated by reference, and thereby become part of the agreement, if the underlying contract "makes clear reference to the document [to be incorporated] and describes it in such terms that its identity may be ascertained beyond doubt." *Liberty Mut. Fire Ins. Co.*, 2009 WL 1588454, at *3 (quoting *Livers Bronze*, 264 S.W.3d at 643) (internal quotation mark omitted).

6

## B. Discussion

### 1. Incorporation

As noted above, each Plaintiff that established a self-directed IRA with Millennium signed an Adoption Agreement. Millennium's Adoption Agreement varied somewhat throughout the years. As a result, the court must consider the language of four different versions of the Adoption Agreement that Millennium used during the years 2001 through 2008.

#### a. 2001 and 2002 Adoption Agreements

In 2001 and 2002, seventeen Plaintiffs executed Adoption Agreements with Millennium, which state:

> I acknowledge that I have read and understood both the Trust Agreement and Disclosure Statement, including the current fee schedule which I understand may periodically change without notice. I acknowledge receipt of the Trust Agreement and Disclosure Document, and understand that I am responsible for the tax effects and requirements noted therein . . . .

Jeanne Reder Affidavit Exhibits (docket nos. 316-2 through 316-3) 1 (Melba Aguilar Adoption Agreement), 2 (Richard Aguilar Adoption Agreement), 3 (Patricia N. Ambrose Adoption Agreement), 4 (Nina M. Blaylock Adoption Agreement), 5 (David L. Caldwell Adoption Agreement), 6 (Teresa Diane Caldwell Adoption Agreement), 10 (Carol K. Green Adoption Agreement), 15 (Donald W. Horner Adoption Agreement), 17 (Carl A. Lavender Adoption Agreement), 18 (Wanda Lavender Adoption Agreement), 22 (Rudolf Owens Adoption Agreement), 24 (Iris Pearson Adoption Agreement), 25 (Carol B. Phillips Adoption Agreement), 26 (William H. Phillips Adoption Agreement), 28 (Betty J. Rolon Adoption Agreement), 29 (Leonard Roman Adoption Agreement), 32 (Winston D. Vines Adoption Agreement) at 2.

Millennium provided the court with a copy of the Trust Agreement referenced in the 2001 and 2002 Adoption Agreements. Millennium's Special Projects Manager, Jean

Moran, averred that the document Millennium provided the court as Exhibit 1 to Moran's first affidavit is a true and correct copy of the Trust Agreement referenced in the 2001 and 2002 Adoption Agreements. The Trust Agreement is labeled with the following heading:

> Individual Retirement Trust Account, Form 5305 (Rev. January 2000) Department of the Treasury Internal Revenue Service, Millennium Trust Company Individual Retirement Trust Account (Under Section 408(a) of the Internal Revenue Code), DO NOT FILE with the Internal Revenue Service.

First Affidavit of Jean Moran (docket no. 316-4), Exhibit 1 (docket no. 316-5) at 1 (structure of quotation not replicated). The first paragraph of the Trust Agreement states:

> This Individual Retirement Account Agreement (hereinafter called the "Agreement") is made between Millennium Trust Company, LLC, an Illinois Limited Liability Company regulated by the Illinois Office of Banks and Real Estate (hereinafter called the "Trustee") and each individual (Hereinafter called the "Grantor") who executes an Adoption Agreement, incorporating the terms of this Agreement, for the purpose of establishing an individual retirement account (hereinafter called the "trust account") as described in Section 408(a) of the Internal Revenue Code 1986, as amended, or any successor statute (hereinafter called the "Code"), upon the terms set forth herein.

*Id.*

The court finds that the Adoption Agreements that seventeen Plaintiffs signed in 2001 and 2002 clearly incorporate by reference the Trust Agreement. The seventeen Plaintiffs that signed Adoption Agreements in 2001 and 2002 "acknowledge[d] that [they] read and understood . . . the Trust Agreement," "acknowledge[d] receipt of the Trust Agreement," and "underst[ood] that [they were] responsible for the . . . requirements noted therein." Jeanne Reder Affidavit Exhibits 1, 2, 3, 4, 5, 6, 10, 15, 17, 18, 22, 24, 25, 26, 28, 29, 32 at 2. Furthermore, the Adoption Agreements are labeled "IRA Adoption Agreements" and expressly anticipate the creation of a self-directed IRA under

26 U.S.C. § 408(h).  The Adoption Agreements state:

> I acknowledge that it is my sole responsibility to direct the investment of the assets of my IRA and that the TRUSTEE shall have NO LIABILITY for any loss, damage, or tax, including a prohibited transaction tax or plan disqualification tax, resulting from transactions executed by the TRUSTEE based on directions received from me or my Investment Agent. I agree to hold the TRUSTEE harmless for its actions hereunder which were directed by me or my Investment Agent and will indemnify the TRUSTEE for any and all claims and costs arising from transactions executed by the TRUSTEE based on directions received from me or my Investment Agent, including, but not limited to, court costs, attorney fees and other expenses incurred.

Jeanne Reder Affidavit Exhibits 1, 2, 3, 4, 5, 6, 10, 15, 17, 18, 22, 24, 25, 26, 28, 29, 32 at 2.

However, the Adoption Agreements alone are insufficient to establish a self-directed IRA.  Instead, to create an IRA, 26 U.S.C. § 408(a) requires a written instrument that states: (1) no contribution, except rollover contributions, will be accepted unless it is in cash; (2) the trustee is a bank or has otherwise demonstrated an ability to manage the funds in accord with 26 U.S.C. § 408; (3) the funds will not be invested in life insurance contracts; (4) "[t]he interest of an individual in the balance in his account is nonforfeitable"; (5) "[t]he assets of the trust will not be commingled with other property except in a common trust fund or common investment fund"; and (6) regulations prescribed by the Secretary shall apply to "the distribution of the entire interest of an individual for whose benefit the trust is maintained."  26 U.S.C. § 408(a).  The Adoption Agreements do not contain the language required to establish an IRA.  Instead, the Adoption Agreements incorporate by reference the Trust Agreement, which contains each of the provisions necessary to create an IRA under 26 U.S.C. § 408(a).

The court rejects Plaintiffs' argument that the Adoption Agreements, which

expressly reference a Trust Agreement, do not successfully incorporate by reference the document Millennium provided the court because it is labeled, "Millennium Trust Company Individual Retirement Trust Account," First Affidavit of Jean Moran, Exhibit 1 at 1, and not "Trust Agreement" or "Custodial Agreement." The court finds that the Adoption Agreements "make[] clear reference to the document [to be incorporated] and describe[] it in such terms that its identity may be ascertained beyond doubt." *Liberty Mut. Fire Ins. Co.*, 2009 WL 1588454, at *3 (quoting *Livers Bronze*, 264 S.W.3d at 643) (internal quotation mark omitted). Accordingly, the court finds that each Adoption Agreement executed in 2001 and 2002 should be read together with the Trust Agreement as one complete contract. *See Intertel, Inc.*, 204 S.W.3d at 196.

The Trust Agreement does not contain a choice-of-law provision, as Millennium implies. However, the Trust Agreement does include an arbitration provision:

> Except as provided below, disputes between the parties to this Agreement shall first be submitted to private binding arbitration at the demand of either party. In any arbitration, each party shall appoint one person who is not in its employ or under contract with it to serve as arbitrator, and the two arbitrators shall name a third arbitrator. Except as otherwise agreed by the parties, the Arbitration Rules of the American Arbitration Association shall apply to the arbitration proceeding. The parties agree that, except below, no court action shall be taken by either party prior to arbitration, and the majority decision of the arbitration panel shall be binding on both parties and in any subsequent action in court.
>
> Notwithstanding the above, the Trustee shall have the right to bring suit against Grantor or the Trust in a court of competent jurisdiction for the recovery of any sums owed Trustee under this agreement, including, but not limited to, fees, costs, expenses and sums paid by Trustee in error to or for the benefit of the Trust.

First Affidavit of Jean Moran, Exhibit 1 at 3. The Trust Agreement also contains a

provision that allows the Trust Agreement to be amended:

> Without prior notice to or consent of the Grantor or Grantor's beneficiaries, the Trustee may amend this Agreement from time to time in order to comply with the provisions of the Internal Revenue Code and the regulations thereunder and may also make such other amendments consistent with the Code and regulations as the Trustee shall deem desirable. The Trust Account is created and shall be administered for the exclusive benefit of the Grantor and his beneficiaries, and no amendment shall permit any part or all of the Trust Account to be used or diverted to any other purpose. A copy of each amendment shall be mailed to the Grantor, if living, otherwise to the beneficiaries entitled to receive payments from the Trust Account at the time of the amendment, within thirty (30) days of the date such amendment is to be effective. Furthermore, other amendments may be made upon proper notice of the Grantor. The rights, duties and responsibilities to the Trustee shall not be changed without its written consent.

*Id.* at 4.

Considering the Adoption Agreement, together with the Trust Agreement, the court finds that the seventeen Plaintiffs that signed Adoption Agreements and created self-directed IRAs with Millennium in 2001 and 2002 agreed to the provisions in the Trust Agreement, including the arbitration provision and the amendment provision. Millennium amended the Trust Agreement several times from 2001 through 2008, and, by 2008, the Trust Agreement was re-labeled the "Traditional IRA Custodial Agreement." First Affidavit of Jean Moran, Corrected Exhibit 2 (docket no. 316-6) at 1. The Custodial Agreement contains additional provisions, including a choice-of-law provision, that states, "All questions arising with respect to the provisions of this Agreement shall be determined by application of the laws of the State of Illinois." *Id.* at 10. However, the arbitration provision remains unchanged in the revised Custodial Agreement. As discussed above, Millennium was acting under its contractual rights when it revised the Trust Agreement. Accordingly, Plaintiffs are bound by the 2008 version of the Custodial Agreement, as

amended.[2]  The court rejects Plaintiffs' argument that it cannot be bound by an arbitration provision in a contract that has not yet been written because, as the court has already noted, the arbitration provision became effective when Plaintiffs signed the Adoption Agreements and the arbitration provision has not been changed in the Custodial Agreement.  Consequently, the seventeen Plaintiffs that signed Adoption Agreements in 2001 and 2002 are bound by the 2008 version of the Custodial Agreement, and the arbitration provision therein.

### b.    2003 through 2005 Adoption Agreements

In 2003 through 2005, six Plaintiffs executed Adoption Agreements with Millennium that state:

> I acknowledge that I have read and understood the Custodial Agreement and Disclosure Statement, and understand that I am responsible for the tax effects and requirements noted therein . . . .

Jeanne Reder Affidavit Exhibits 7 (Albert D. Carrell Adoption Agreement), 9 (Samuel R. Currier Adoption Agreement), 23 (Ronald Pastor Adoption Agreement), 30 (Phillip L. Rosemann Adoption Agreement), 31 (David C. Schultz Adoption Agreement), 33 (Loren Winterhof Adoption Agreement) at 2.  The Adoption Agreements Plaintiffs signed in 2003 through 2005 expressly reference and incorporate the Custodial Agreement that was in effect at the time each Plaintiff signed his or her respective Adoption Agreement.  Once again, the Adoption Agreements make clear Plaintiffs' intent to form self-directed IRAs, and the Adoption Agreements alone were insufficient to establish an IRA.  Instead, the language in the Custodial Agreement, which was incorporated by reference in the Adoption Agreements, was necessary to establish an IRA.  *See* 26 U.S.C. § 408(a).

Although the court does not have a copy of each version of the Custodial Agreement

---

[2] The 2008 version of the Custodial Agreement was the last version in effect when Plaintiffs terminated their accounts with Millennium.

that was in effect from 2003 through 2005, Millennium maintains, and Plaintiffs do not refute, that each version of the Custodial Agreement contains an identical arbitration provision and a provision allowing Millennium to amend the Custodial Agreement. Accordingly, for the reasons discussed above, each of the six Plaintiffs that signed Adoption Agreements from 2003 through 2005 are bound by the 2008 version of the Custodial Agreement, including the arbitration provision therein.

<em>c.     2006 through 2008 Adoption Agreements</em>

In 2006 through 2008, eight Plaintiffs executed Adoption Agreements with Millennium, which state:

> I acknowledge that I have received a copy of the Individual Retirement Account Custodial Agreement and the accompanying Disclosure Statement, and I understand and agree to be bound by the terms, and conditions in both.

Jeanne Reder Affidavit Exhibits 11 (Odis A. Hash Adoption Agreement), 12 (Donna Sue Hogshooter Adoption Agreement), 13 (Audrey L. Holland Adoption Agreement), 14 (John R. Holland Adoption Agreement), 16 (Stanley C. Kuhlo, Jr. Adoption Agreement), 20 (Lorena B. Messenger Adoption Agreement), 21 (Bob K. Moore Adoption Agreement), 27 (Buddy M. Quessenberry Adoption Agreement) at 3; *see also* Jeanne Reder Affidavit Exhibit 31 at 5 (David C. Schultz first signed an Adoption Agreement in 2003 and signed another in 2008).  In 2006 through 2008, two Plaintiffs executed Adoption Agreements with Millennium, which state:

> I acknowledge that I have received a copy of the Individual Retirement Custodial Account Agreement and the accompanying Disclosure Statement, and I understand and agree to be bound by the terms, and conditions in both.

Jeanne Reder Affidavit Exhibits 8 (Jerry Cronkhite Adoption Agreement, 19 (Stanko K. Matayo Adoption Agreement) at 3.  The Adoption Agreements Plaintiffs signed in 2006 through 2008 expressly reference and incorporate the Custodial Agreement that was

effective at the time each Plaintiff executed his or her respective Adoption Agreement. Thus, for the reasons discussed above, each of the ten Plaintiffs that executed an Adoption Agreement with Millennium from 2006 though 2008 is bound by the 2008 version of the Custodial Agreement, including the arbitration provision therein.

### 2. *Plaintiffs' remaining arguments*

#### a. *Incorporation*

In their Resistance, Plaintiffs advance additional arguments as to why the Adoption Agreements do not incorporate the Custodial Agreement by reference. The court will attempt to address each of Plaintiffs' arguments in turn.

First, Plaintiffs maintain that the language used in the different versions of the Adoption Agreement is insufficient to incorporate the Custodial Agreement by reference. However, Plaintiffs misconstrue the language of the Adoption Agreements. The seventeen Plaintiffs that signed Adoption Agreements in 2001 and 2002 "acknowledge[d] that [they] read and understood . . . the Trust Agreement," "acknowledge[d] receipt of the Trust Agreement," and "underst[ood] that [they were] responsible for the . . . requirements noted therein." Jeanne Reder Affidavit Exhibits 1, 2, 3, 4, 5, 6, 10, 15, 17, 18, 22, 24, 25, 26, 28, 29, 32 at 2. The six Plaintiffs that signed Adoption Agreements in 2003 through 2005 "acknowledge[d] that [they] read and understood the Custodial Agreement . . . and underst[ood] that [they were] responsible for the . . . requirements noted therein." Jeanne Reder Affidavit Exhibits 7, 9, 23, 30, 31, 33 at 2. Eight Plaintiffs that executed Adoption Agreements with Millennium in 2006 through 2008 "acknowledge[d] that [they] received a copy of the Individual Retirement Account Custodial Agreement . . . and [they] underst[ood] and agree[d] to be bound by the terms, and conditions [therein]." Jeanne Reder Affidavit Exhibits 11, 12, 13, 14, 16, 20, 21, 27 at 3. Finally, two Plaintiffs that executed Adoption Agreements with Millennium in 2006 through 2008 "acknowledge[d] that [they] received a copy of the Individual Retirement

Custodial Account Agreement . . . and [they] underst[ood] and agree[d] to be bound by the terms, and conditions [therein]." Jeanne Reder Affidavit Exhibits 8, 19 at 3. Such language is sufficient to incorporate the applicable Custodial Agreement by reference. *See* 11 Richard A. Lord, Williston on Contracts § 30:25 (4th ed. 2012).

Next, Plaintiffs maintain that the different versions of the Adoption Agreement do not incorporate by reference the document Millennium purports to be the Custodial Agreement because it has a different title than the document referenced in the Adoption Agreements. The Adoption Agreements Plaintiffs signed in 2001 and 2002 incorporate by reference a "Trust Agreement."[3] *See* Jeanne Reder Affidavit Exhibits 1, 2, 3, 4, 5, 6, 10, 15, 17, 18, 22, 24, 25, 26, 28, 29, 32 at 2. The document that served as the Trust Agreement in 2001 and 2002 was labeled with the following heading:

> Individual Retirement Trust Account, Form 5305 (Rev. January 2000) Department of the Treasury Internal Revenue Service, Millennium Trust Company Individual Retirement Trust Account (Under Section 408(a) of the Internal Revenue Code), DO NOT FILE with the Internal Revenue Service.

First Affidavit of Jean Moran, Exhibit 1 at 1 (structure of quotation not replicated). The court finds that it is irrelevant that the document that served as the Trust Agreement in 2001 and 2002 was not labeled "Trust Agreement," because the Adoption Agreements "make[] clear reference to the [Trust Agreement] and describe[] it in such terms that its identity may be ascertained beyond doubt." *Liberty Mut. Fire Ins. Co.*, 2009 WL 1588454, at *3 (quoting *Livers Bronze*, 264 S.W.3d at 643) (internal quotation mark omitted). As discussed above, the Adoption Agreements expressly state that Plaintiffs received the Trust Agreement and understood that they were responsible for the requirements in the Trust Agreement. Furthermore, Plaintiffs' express intent in executing

---

[3] As discussed above, Millennium subsequently amended the Trust Agreement and retitled it the Custodial Agreement.

the Adoption Agreements was to establish a self-directed IRA. Because the Adoption Agreements alone are insufficient to create an IRA, the Adoption Agreements incorporate by reference the Trust Agreement, which includes the language necessary to create an IRA. The language in the Trust Agreement also makes clear that it is the document incorporated by reference in the Adoption Agreement. *See* First Affidavit of Jean Moran, Exhibit 1 at 1 ("This Individual Retirement Account Agreement . . . is made between Millennium Trust Company, LLC. . . and each individual . . . who executes an Adoption Agreement, incorporating the terms of this Agreement, for the purpose of establishing an individual retirement account . . . ."). Accordingly, the court finds that Plaintiffs' focus upon the title of the Trust Agreement is misplaced, and the Trust Agreement is expressly incorporated by reference in the Adoption Agreements.

Similarly, the Adoption Agreements that Plaintiffs executed in 2003 through 2008 incorporate by reference either a "Custodial Agreement," *see* Jeanne Reder Affidavit Exhibits 7, 9, 23, 30, 31, 33 at 2, an "Individual Retirement Account Custodial Agreement," *see* Jeanne Reder Affidavit Exhibits 11, 12, 13, 14, 16, 20, 21, 27 at 3, or an "Individual Retirement Custodial Account Agreement," *see* Jeanne Reder Affidavit Exhibits 8, 19 at 3. The document that served as the Custodial Agreement from 2003 through 2008 was labeled with the heading: "Traditional IRA Custodial Agreement." First Affidavit of Jean Moran, Corrected Exhibit 2 at 1. Again, it is irrelevant that the Adoption Agreements Plaintiffs executed in 2003 through 2008 use language similar to, and not identical to, the heading on the Custodial Agreement. The Adoption Agreements Plaintiffs executed in 2003 through 2008 make clear reference to the Custodial Agreement and sufficiently incorporate the Custodial Agreement by reference.

### b. *Arbitration provision*

Plaintiffs also advance several arguments regarding the insufficiency of the arbitration provision. The court will attempt to address each of Plaintiffs' arguments in

turn. First, Plaintiffs' argument that the Adoption Agreements themselves do not expressly agree to arbitration is irrelevant in light of the fact that the court has found that each Adoption Agreement incorporates by reference a Trust Agreement or Custodial Agreement, which do contain an arbitration provision.

Furthermore, the court rejects Plaintiffs' argument that the FAA requires "clear and unmistakable evidence" of an agreement to arbitrate. Resistance at 5-6. Although such a requirement would be satisfied in this case, Plaintiffs misconstrue the applicable law. The cases Plaintiffs cite merely state that there must be clear and unmistakable evidence that the parties agreed to arbitrate the issue of arbitrability. *See First Options of Chi., Inc.*, 514 U.S. at 944-45. In fact, the case Plaintiffs cite recognizes that, generally, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, but that "the law reverses the presumption" when the matter is whether the parties have agreed to arbitrate the issue of arbitrability. *Id.* at 945. Because Millennium has asked the court to decide whether an agreement to arbitrate exists, and Millennium has not asked the court to allow the arbitration panel to decide whether the parties agreed to arbitrate this dispute, the "clear and unmistakable evidence" standard does not apply. *See Rent-A-Center, W., Inc. v. Jackson*, ___ U.S.___, ___, 130 S. Ct. 2772, 2782-84 (2010).

Next, the court rejects Plaintiffs' argument that the arbitration provision is insufficient because Missouri's Arbitration Act requires specific language in an agreement to arbitrate that is not present in the Custodial Agreements. Because the FAA controls the instant action, Missouri's Arbitration Act is preempted. *See Bunge Corp. v. Perryville Feed & Produce, Inc.*, 685 S.W.2d 837, 839 (Mo. 1985) (en banc) (holding that the Missouri Arbitration Act "may not be applied to defeat the arbitration provision of a contract which is within the coverage of the [FAA]"); *see also Paetzold v. Am. Sterling Corp.*, 247 S.W.3d 69, 74 (Mo. Ct. App. 2008) (holding that the specific language required in section 435.460 of the Missouri Arbitration Act does not apply to cases

governed by the FAA).

Finally, the court rejects Plaintiffs' argument that the arbitration clause at issue is unconscionable. Assuming without deciding that the contracts at issue are adhesion contracts, that alone is insufficient to make the contracts unconscionable. *See, e.g.*, *Cicle v. Chase Bank USA*, 583 F.3d 549, 555 (8th Cir. 2009) ("These sorts of take-it-or-leave-it agreements between businesses and consumers are used all the time in today's business world. If they were all deemed to be unconscionable and unenforceable contracts of adhesion, or if individual negotiation were required to make them enforceable, much of commerce would screech to a halt."). Plaintiffs argue that the Custodial Agreement "may not have been provided to [P]laintiffs," Resistance at 15, at the time they signed the Adoption Agreement. However, this argument lacks merit because Plaintiffs acknowledged that they "read and understood" or "received a copy of" the Custodial Agreement. *See* Jeanne Reder Affidavit Exhibits 1-33.

Plaintiffs next argue that the Custodial Agreement is unconscionable because it gives Millennium the right to unilaterally amend the agreement. However, Plaintiffs' argument is unavailing as Plaintiffs provide no support for the position that a contract provision allowing one party to amend the agreement is unconscionable.

Plaintiffs also argue that the Custodial Agreement is unenforceable for lack of mutuality because the arbitration provision gives Millennium the right to bring suit to recover sums owed under the agreements but requires Plaintiffs to arbitrate all disputes. To support their position, Plaintiffs cite an Eighth Circuit Court of Appeals case that notes, under Arkansas law, a contract clause requiring one party to submit to arbitration, and allowing the other to pursue any remedy at law or equity, is unenforceable. *See Wiser v. Wayne Farms*, 411 F.3d 923, 925 (8th Cir. 2005). Nonetheless, under Illinois law, as well as Missouri law, an arbitration provision that requires one party to arbitrate disputes, and allows another party to litigate certain disputes, is not unenforceable for lack of mutuality,

so long as the contract, as a whole, is supported by consideration.[4] *See, e.g.*, *Molton, Allen & Williams, LLC v. Cont'l Cas. Ins. Co.*, No. 09-cv-6924, 2010 WL 780353, at *4-6 (N.D. Ill. Mar. 3, 2010) (collecting cases); *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 858-59 (Mo. 2006) (en banc) ("The majority of courts adhere to the Restatement of Contract's view that mutuality is satisfied if there is consideration as to the whole agreement, regardless of whether the included arbitration clause itself was one-sided." (quotation omitted)).  The court finds that the Adoption Agreements, read together with the Custodial Agreement, are supported by adequate consideration.

Accordingly, the court finds that each of Plaintiffs' arguments regarding the unenforceability of the arbitration provision fail and the arbitration provision is enforceable.

### 3.    *Scope of arbitration provision*

Having concluded that "a valid agreement to arbitrate exists between the parties," the court must next determine "whether the specific dispute falls within the scope of that agreement." *Houlihan*, 31 F.3d at 694-95.  As discussed above, each version of the Custodial Agreement contains an identical arbitration provision, which states, "Except as provided below, disputes between the parties to this Agreement shall first be submitted to private binding arbitration at the demand of either party."  First Affidavit of Jean Moran, Exhibit 1 at 3; First Affidavit of Jean Moran, Corrected Exhibit 2 at 8.  Such an arbitration provision is quite broad, and, by its terms, contemplates that *all* disputes between the parties to the Custodial Agreement shall first be submitted to arbitration.  *See PRM Energy Sys., Inc. v. Primenergy*, L.L.C., 592 F.3d 830, 836-37 (finding an arbitration provision covering "'all disputes arising under'" an agreement was "generally broad in scope" and,

---

[4] As discussed above, there is an Illinois choice-of-law provision in the Custodial Agreement.  However, the court need not decided whether Illinois or Missouri law controls because application of either state's law would have the same result.

thus, encompassed all the claims at issue, including those arising in tort, rather than contract); *see also 3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008) (noting that district courts should compel arbitration "as long as the underlying factual allegations simply 'touch matters covered by' the arbitration provision" (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 n.13 (1985))); *Barton Enters., Inc. v. Cardinal Health, Inc.*, No. 4:10 CV 324 DDN, 2010 WL 2132744, at *5 (E.D. Mo. May 27, 2010) ("When the parties have agreed to a broad arbitration clause, 'only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" (quoting *Estate of Athon v. Conseco Fin. Servicing Corp.*, 88 S.W.3d 26, 30 (Mo. Ct. App. 2002))). Accordingly, the court finds that the specific claims Plaintiffs raise in the instant action—that Millennium conspired to violate RICO and was negligent in its provision of professional services—fall within the broad scope of the arbitration provision.

### 4.    *Whether dismissal is appropriate*

As discussed above, the claims Plaintiffs raise in the instant action fall within the scope of a valid arbitration agreement between the parties. The FAA provides that, when a court finds the claims raised in an action are properly referable to arbitration, the court should stay the action until arbitration proceedings are concluded. *See* 9 U.S.C. § 3. "However, where all of the issues raised in the Complaint must be submitted to arbitration in accordance with a valid and enforceable arbitration agreement, most courts agree that dismissal of the cause, rather than imposing a stay, is appropriate." *Rothman Furniture Stores, Inc. v. Everest Software, Inc.*, No. 4:10-CV-848 CDP, 2010 WL 4319707, at *2 (E.D. Mo. Oct. 22, 2010).

The Eighth Circuit recently recognized this "judicially-created exception to the general rule which indicates district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be

resolved by arbitration." *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011) (citing *Jann v. Interplastic Corp.*, 631 F. Supp. 2d 1161, 1167 (D. Minn. 2009)). In *Green*, the Eighth Circuit concluded that, because the arbitrator could find that the plaintiffs, as transportation workers, were exempt from the FAA, the district court abused its discretion in dismissing the action, rather than staying the action, because "it [was] not clear all of the contested issues between the parties [would] be resolved by arbitration." *Id.* at 770. However, the instant action is distinguishable from *Green* because Plaintiffs do not argue that they are exempt from the FAA, and the court has already concluded that both of Plaintiffs' claims against Millennium fall within the scope of a valid arbitration provision. The arbitration provision in the instant action requires the parties to submit all disputes to binding arbitration and provides that "the majority decision of the arbitration panel shall be binding on both parties and in any subsequent action in court." First Affidavit of Jean Moran, Corrected Exhibit 2 at 8. Accordingly, the court finds that no purpose would be served by staying the case, and dismissal is appropriate so that the parties may proceed with arbitration.

## V. CONCLUSION

In light of the foregoing, it is **HEREBY ORDERED THAT:**

(1)     The Motion to Compel Arbitration and Dismiss (docket no. 315) is **GRANTED**.

(2)     Counts 2 and 5 of the Second Amended Complaint (docket no. 252) against Millennium Trust Company, LLC are **DISMISSED**.

**DATED** this 26th day of June, 2012

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA